827 F.2d 718
 Fed. Sec. L. Rep. P 93,383, 9 Fed.R.Serv.3d 276
 Suzanne KIRKPATRICK; Dorothy D. Casler and Charles H.
Lindsey, on behalf of themselves and all others
similarly situated, Plaintiffs-Appellants,
v.
J.C. BRADFORD & CO., Defendant-Appellee.
Glenn T. SANDERS on behalf of himself and all others
similarly situated, and Leslie D. Sanders,
Plaintiffs-Appellants,
v.
ROBINSON HUMPHREY/AMERICAN EXPRESS, INC., and
Shearson/American Express, Inc., Defendants-Appellees.
Tommy E. PARKER, as custodian for Kimberly M. PARKER and
James L. Smith, on behalf of themselves and all
others similarly situated, Plaintiffs-Appellants,
v.
PAINE WEBBER GROUP, INC., Defendant-Appellee.
 Nos. 86-8624 to 86-8626.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 15, 1987.
Rehearings and Rehearings En Banc Denied Oct. 21, 1987.
 
 Glenn Delk, Churchill & Ferguson, Atlanta, Ga., Kenneth A. Jacobsen, Richard D. Greenfield, Haverford, Pa., for plaintiffs-appellants in Nos. 86-8624, 86-8625.
 Ames Davis, Robert E. Boston, Nashville, Tenn., for defendant-appellee in No. 86-8624.
 Lloyd S. Clareman, Harvey D. Myerson, Bradley C. Twedt, Timothy J. Carey, Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, New York City, Peter J. Anderson, Mack Young, Peterson Young Self & Asselin, Atlanta, Ga., for defendants-appellees in No. 86-8625.
 Brenda M. Nelson, Greenfield & Chimicles, Kenneth A. Jacobsen, Richard D. Greenfield, Philadelphia, Pa., for plaintiffs-appellants in No. 86-8626.
 Richard M. Kirby, Hansell & Post, Atlanta, Ga., Robert E. Zimet, Skadden, Arpts, Slate, Meaglher & Flom, New York City, for defendant-appellee in No. 86-8626.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before VANCE and KRAVITCH, Circuit Judges, and BROWN*, Senior Circuit Judge.
 KRAVITCH, Circuit Judge:
 
 
 1
 Plaintiffs in these companion cases filed certified interlocutory appeals pursuant to 28 U.S.C. Sec. 1292(b) challenging the district court's denial of class certification under Rule 23 of the Federal Rules of Civil Procedure. The district court denied class certification in each case on the alternative grounds that the named plaintiffs were not adequate class representatives as required by Fed.R.Civ.P. 23(a)(4) and that individual questions of fact predominated over common questions of law and fact in contravention of Fed.R.Civ.P. 23(b)(3). Concluding that the district court applied erroneous legal standards, we reverse and remand for further consideration.
 
 I. BACKGROUND
 
 2
 These are a few of the many cases arising out of the virtual collapse in 1984 of the Petro-Lewis oil and natural gas investment funds. From 1970 to 1984, about 180,000 people purchased more than $3 billion worth of Petro-Lewis securities and limited partnerships. When the price of oil and gas declined in 1981 and 1982, Petro-Lewis began borrowing funds to pay partnership distributions, to service its debt, and to promote the sale of additional programs. In February 1984, revealing for the first time that it was in dire financial straits, Petro-Lewis announced that it would implement a series of drastic economy measures, including cutting partnership distributions by as much as 50 per cent and selling between one quarter and one third of its reserves. Numerous lawsuits followed.
 
 
 3
 In In re Petro-Lewis Securities Litigation, [1984-85 Transfer Binder], Fed.Sec.L.Rep. p 91,899 (D.Colo.1984), the U.S. District Court for the district of Colorado approved a settlement of eleven consolidated class suits brought under various provisions of the federal securities laws against the directors and certain corporate entities of the Petro-Lewis organization. Under the terms of the settlement, the participating class members agreed to release the defendants and all Petro-Lewis subsidiaries in return for the formation of a royalty trust and a settlement fund valued at $23.5 million. The settlement agreement expressly provided that the plaintiff class members retained the right to file suit against any nondefendants, including broker-dealers of Petro-Lewis securities and limited partnerships.
 
 
 4
 In these cases, plaintiffs allege that the actions of the defendant brokerage firms and individuals in selling and promoting interests in Petro-Lewis violated sections 11 and 12(2) of the Securities Act of 1933, 15 U.S.C. Secs. 77k, 77l (2), section 10 of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j, Rule 10b-5 promulgated thereunder, 17 C.F.R. Sec. 240.10b-5, and various common law and statutory obligations under state law.[1] Claiming to represent classes of plaintiffs who, between January 1, 1981 to February 6, 1984, purchased, reinvested in, or otherwise acquired Petro-Lewis limited partnership interests from the defendant firms, the plaintiffs alleged that the defendants knowingly or recklessly participated with Petro-Lewis in disseminating materially misleading information regarding Petro-Lewis' financial condition and failed to provide other information that would have made the statements not misleading.
 
 
 5
 After discovery and hearings, the district court issued an order and an amended order denying certification of the classes under Rule 23 of the Federal Rules of Civil Procedure. Although the court determined that each suit satisfied the class action prerequisites of Rule 23(a)(1), (2), and (3), the court denied certification on the ground that the named plaintiffs were not adequate class representatives as required by Rule 23(a)(4). The basis for this determination was that the named plaintiffs did not demonstrate that they would pursue the litigation with sufficient vigor to protect the interests of the class. As an alternative ground of decision, the court held that individual questions of law and fact outweighed common questions and thus that the actions did not satisfy the standards of Rule 23(b)(3). Concluding that its ruling was based upon determinations of law as to which there may be substantial ground for difference of opinion and that an immediate appeal from the denial of class certification would materially advance the ultimate determination of the actions, the court certified its order for an interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(b). We accepted jurisdiction. See id.
 
 
 6
 II. RULE 23(b)(3): PREDOMINANCE OF COMMON OR INDIVIDUAL QUESTIONS
 
 
 7
 The district court's conclusion that individual questions predominate over common questions is based directly on the court's interpretation of the substance of the plaintiffs' claims. Consequently, we will consider first that aspect of the court's denial of class certification.
 
 
 8
 In holding that certification was improper under Rule 23(b)(3),[2] the court concluded that common questions of law and fact in the 10(b) and 10b-5 claims were dominated by individual questions of reliance on the part of the particular purchasers, statutes of limitations in each state in which there may be class members, and arbitration agreements in many of the purchase contracts. The court viewed the state law claims to be inappropriate for class action treatment because liability would depend upon the substantive law of the different states. Finally, the court refused to consider certifying classes limited to the section 11 and 12(2) claims after concluding that the 10(b) and state law claims were the dominant claims asserted in the complaints.
 
 A. Section 10(b) and Rule 10b-5
 
 9
 The complaints allege that the defendants violated section 10(b) and Rule 10b-5 by engaging in two related but different courses of conduct. First, the complaints contend that the defendants participated with Petro-Lewis in disseminating misleading prospectuses and in engaging in a standardized promotion by the individual brokers. Second, the plaintiffs claim that the firms continued to sell and promote Petro-Lewis shares despite the firms' awareness or reckless disregard of Petro-Lewis' severe financial difficulties. Based on these allegations, the plaintiffs assert three theories of liability under which common issues of law and fact necessarily would outweigh individual issues. They first contend that their claims concern primarily acts of omission and thus that reliance on the part of individual purchasers should be presumed under the rule of Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1975). Second, they argue that the claims fall under the fraud-on-the-market theory adopted by our predecessor court in Shores v. Sklar, 647 F.2d 462 (5th Cir. May 1981) (en banc), cert. denied, 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983).[3] Finally, they argue that the allegations involve a common course of conduct toward all defendants, and thus that any issues of individual reliance could not predominate over common questions of facts. See e.g., Kennedy v. Tallant, 710 F.2d 711 (11th Cir.1983).
 
 
 10
 The district court rejected each of these theories. The court found the characterization of the claims as involving primarily omissions to be precluded by the interpretation in Huddleston v. Herman & McLean, 640 F.2d 534 (5th Cir. Unit A March 1981), aff'd in part and rev'd in part on other grounds, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983), and Cavalier Carpets v. Caylor, 746 F.2d 749 (11th Cir.1984), of the requirements for an omissions case under Affiliated Ute. The court rejected the fraud-on-the-market theory as insufficiently supported by the pleadings or the evidence proffered by the plaintiffs. Finally, the court refused class action treatment under the course of conduct theory based on the court's determination that the plaintiffs' allegations involve primarily individualized oral representations rather than a common scheme by the defendants toward the plaintiff purchasers.
 
 
 11
 We agree with the district court that under the precedent of this circuit the plaintiffs' complaints cannot be properly characterized as omissions cases under the standards of Affiliated Ute. Here, as in Cavalier Carpets, supra, and Huddleston, supra, the complaints indicate that "[t]he defendants did not stand mute in the face of a duty to disclose as did the defendants in Affiliated Ute." Cavalier Carpet, 746 F.2d at 749 n. 22 (quoting Huddleston, 640 F.2d at 548). Rather, as in those cases, the allegations contend that the defendants "undertook ... to disclose relevant information ... now alleged to contain certain misstatements of fact and to fail to contain other facts necessary to make the statements made, in light of the circumstances, not misleading." Id. Consequently, the district court properly concluded that the complaints at most allege mixed claims of misrepresentations and omissions and thus that Affiliated Ute 's presumption of reliance does not apply.
 
 
 12
 We cannot agree, however, with the court's rejection of the fraud-on-the-market theory as a basis for class action treatment. In Shores v. Sklar, supra, the former Fifth Circuit sitting en banc held that, in fraud claims asserted under Rules 10b-5(1) and (3), the reliance element of Rule 10b-5 may be satisfied by proof that the plaintiff relied on the integrity of the market rather than on specific misrepresentations by the defendants. Under Shores, reliance may be established by proof that securities not traded on the open market could not have been issued but for a fraudulent scheme by the defendants. 647 F.2d at 469; cf. Lipton v. Documation, Inc., 734 F.2d 740, 747 (11th Cir.1984), cert. denied, 469 U.S. 1132, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985) (adopting fraud-on-the-market theory in context of securities traded in open market). Here, consistent with Shores, plaintiffs alleged that the Petro-Lewis shares, which were not traded on the open market, could not have been marketed but for the defendants' fraud.
 
 
 13
 In rejecting this claim as improper for class treatment, the court relied solely on its conclusion that the plaintiffs' allegations lacked evidentiary support. Despite the court's assertions to the contrary, this determination was an inappropriate inquiry into the merits of the plaintiffs' claims. Certainly, as the court noted in its order, a court may look beyond the allegations of the complaint in determining whether a motion for class certification should be granted. General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); Love v. Turlington, 733 F.2d 1562, 1564 (11th Cir.1984). Indeed, it is often necessary for a district court to consider, for example, a deposition of a named plaintiff to determine whether Rule 23(a)'s commonality and typicality requirements are met. See, e.g., Falcon, supra; Nelson v. U.S. Steel Corp., 709 F.2d 675, 679-80 (11th Cir.1983). Here, however, the court's rejection of the fraud-on-the-market theory was based upon nothing other than the court's assessment of the plaintiffs' likelihood of success on the claims. This is an improper basis for deciding the propriety of a class action. E.g., Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78, 94 S.Ct. 2140, 2152-53, 40 L.Ed.2d 732 (1974); Nelson, 709 F.2d at 679.
 
 
 14
 Nor can the court's rejection of the fraud-on-the-market theory be upheld under the rationale that fraud-on-the-market claims are improper for class treatment where, as here, the evidence indicates that the named plaintiffs relied on the advice of their brokers rather than solely on the integrity of the market. As the defendants note, several district courts have denied class certification for fraud-on-the-market claims where evidence indicates that the named plaintiffs may in fact have relied on factors other than the market's integrity. These cases, however, generally have concerned fraud-on-the-market claims involving securities traded in an open market. See Masri v. Wakefield, 106 F.R.D. 322, 325 (D.Colo.1984); Seiler v. E.F. Hutton & Co., 102 F.R.D. 880, 890 (D.N.J.1984); McNichols v. Loeb Rhoades, 97 F.R.D. 331, 334 (N.D.Ill.1982). But see Shores v. Sklar, [current] Fed.Sec.L.Rep. (CCH) p 92, 874 (N.D.Ala. July 30, 1986) (on remand, denying class certification of fraud-on-the-market claim involving security not openly traded). That version of the fraud-on-the-market theory focuses on the plaintiffs' reliance on the integrity of an open and developed market to set a price accurately reflecting the security's value. See Lipton v. Documation, 734 F.2d at 743. The issue of reliance on an open market thus turns on a matter of degree--the price of the security--and not, as in Shores, the absolute question of whether the security was worthy of being issued.
 
 
 15
 Because the Petro-Lewis shares were not traded on the open market, we need not now consider the appropriateness of class certification of traditional fraud-on-the-market claims involving securities that are openly traded. We conclude, however, that where as here, a complaint alleges that a security not traded on the open market could not have been issued but for the fraud of the defendants, class action treatment is not precluded by the possibility that some purchasers, including the named plaintiffs, might have relied on factors other than the integrity of the market.
 
 
 16
 Shores did not hold, as the defendants contend, that recovery is possible under a fraud-on-the-market claim only when a claimant proves reliance on the integrity of the market to the exclusion of all other factors. Rather, Shores was based on the premise that "[t]he securities laws allow an investor to rely on the integrity of the market to the extent that the securities it offers to him for purchase are entitled to be in the marketplace." 647 F.2d at 471. Consequently, where a security could not have been issued but for a fraudulent scheme, the fact that the investor may have relied on other factors in deciding to purchase that security at a particular price does not minimize the essential fact that the purchaser relied on the market's integrity to ensure that the security was worthy of being issued. Indeed, as the court noted in Shores, under a theory that the defendants' fraud caused securities to be issued, "it would have availed [the plaintiff] nothing to have read the [allegedly misleading] Offering Circular." Id. at 470-71. A Shores fraud-on-the-market claim thus is especially suited for class action treatment, as it makes virtually irrelevant the possibility that the various purchasers may have relied on different representations regarding the desirability of the particular security in question: all have relied on the integrity of the market in the but-for sense required by Shores.[4]
 
 
 17
 We conclude for similar reasons that the district court also improperly found that the plaintiffs' 10b-5(2) misrepresentation claims were not suited for class treatment. The basis for the court's denial of class certification of the misrepresentation claims was the court's conclusion that the claims involved primarily oral representations and thus would present individual issues of reliance. To arrive at this conclusion, the court focused on deposition evidence indicating that the named plaintiffs relied not so much on prospectuses and other written materials as on the recommendations of their individual brokers. The court further found that the plaintiffs had uncovered no evidence to show that their particular brokers had attended the Petro-Lewis sales sessions or explicitly followed the standardized sales pitch.
 
 
 18
 Contrary to the court's construction of the claims, however, the complaints alleged that the defendant brokerage firms and individual officers engaged in a common course of conduct to misrepresent, by affirmative acts and by omission, the financial condition of Petro-Lewis. See, e.g., Kennedy v. Tallant, 710 F.2d at 711. Neither the complaints nor the deposition testimony relied upon by the district court indicate that any oral representations to the named plaintiffs varied materially from the misleading information alleged to have been disseminated generally as a result of the defendants' common schemes. See id.; cf. Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 482 F.2d 880, 883 (5th Cir.1973) ("If there is any material variation in the representations made or in the degrees of reliance thereupon, a fraud case may be unsuited for treatment as a class action."). Consequently, the possibility that the named plaintiffs or other potential class members may have obtained the allegedly misleading information via their individual brokers rather than through widely distributed written information cannot transform the allegations of the complaints into claims concerning primarily questions of individual reliance. The claims essentially involve allegations that the defendants "committed the same unlawful acts in the same method against the entire class." Kennedy v. Tallant, 710 F.2d at 717.
 
 
 19
 As in any 10b-5(2) misrepresentation claim, each potential class member must prove reliance on some form of the allegedly misleading information in order to recover. See, e.g., Shores v. Sklar, 647 F.2d at 468. In view of the overwhelming number of common factual and legal issues presented by plaintiffs' misrepresentation claims, however, the mere presence of the factual issue of individual reliance could not render the claims unsuitable for class treatment. Here, as in Kennedy v. Tallant, each of the complaints alleges "a single conspiracy and fraudulent scheme against a large number of individuals" and thus is "particularly appropriate for class action." 710 F.2d at 718. Moreover, given the numerous and substantial common issues presented by both the fraud-on-the-market and the misrepresentation claims, the common questions in these cases cannot legitimately be considered subordinate to the individual questions presented by the different state statutes of limitations that may be applicable or by the arbitration agreements contained in some of the purchasers' contracts.[5] "Rule 23 does not require that all the questions of law and fact raised by the dispute be common." Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1557 (11th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986).
 
 
 20
 In sum, we conclude that as a result of the district court's erroneous analysis of the fraud-on-the-market claims and its mischaracterization of the misrepresentations claims, the court incorrectly determined that individual issues predominated over common issues. Contrary to the court's conclusions, these claims involve common issues that clearly overwhelm the individual issues that may be present. Consequently, "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." Kennedy v. Tallant, 710 F.2d at 718. The district court thus abused its discretion in ruling that the requirements of Rule 23(b)(3) were not satisfied in this case. See, e.g., Cox v. American Cast Iron Pipe Co., 784 F.2d at 1557-58.
 
 B. State Law Claims
 
 21
 In concluding that the state law claims failed to satisfy the requirements of Rule 23(b)(3), the district court reasoned that the differing standards of liability required by the laws of the various states would render class action treatment unmanageable. We agree with the district court that the state law claims would require application of the standards of liability of the state in which each purchase was transacted.[6] The district court thus did not abuse its discretion in denying class certification on these claims. See, e.g., Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 482 F.2d at 883.
 
 C. Section 11 and 12(2) Claims
 
 22
 In explaining its denial of class certification of the section 11 and 12(2) claims, the district court stated that it "did not address" these claims individually because to separate these claims from the Rule 10b-5 and state law claims would be "unduly burdensome" on the court. The court consequently denied class certification of the Rule 11 and 12(2) claims based upon its conclusion that the 10b-5 and the state law claims did not meet the requirements of Rule 23(b)(3). In view of our determination that the court erroneously ruled that the 10b-5 claims did not meet the requirements of Rule 23(b)(3), the court must of course reconsider its decision regarding the section 11 and 12(2) claims.
 
 
 23
 Independent of our decision on the 10b-5 claims, however, we conclude that the court erred in failing to consider separately the appropriateness of the class action treatment of the section 11 and 12(2) claims. Although there is some overlap between section 10(b) and sections 11 and 12(2), the provisions "involve distinct causes of action and were intended to address different types of wrongdoing." Herman & McLean v. Huddleston, 459 U.S. 375, 103 S.Ct. 683, 687, 688, 74 L.Ed.2d 548 (1983). The failure of the district court to give separate consideration to class action certification of these distinct claims thus could serve neither the securities laws' purpose of protecting investors, see, e.g., id., 103 S.Ct. at 687, nor Rule 23's purpose of protecting the courts from needlessly repetitious litigation, see, e.g., Kennedy v. Tallant, 710 F.2d at 718. By failing to consider these claims separately, the court abused its discretion.
 
 III. ADEQUATE CLASS REPRESENTATION
 
 24
 Having concluded that the district court's ruling on the requirements of Rule 23(b)(3) constituted an abuse of the court's discretion, we must address the court's alternative holding that the named plaintiffs in each of these cases did not satisfy the adequate representation requirement of Rule 23(a)(4) because they failed to demonstrate sufficient "vigor" to prosecute a class suit.
 
 
 25
 Among the prerequisites to the maintenance of a class action is the requirement of Rule 23(a)(4) that the class representatives "will fairly and adequately protect the interests of the class." The purpose of this requirement, as of many other of Rule 23's procedural mandates, is to protect the legal rights of absent class members. Because all members of the class are bound by the res judicata effect of the judgment, a principal factor in determining the appropriateness of class certification is "the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." Mersay v. First Republic Corp., 43 F.R.D. 465, 470 (S.D.N.Y.1968); see also Shatzman v. Talley, 91 F.R.D. 270, 273 (N.D.Ga.1981) (insufficiency of funds to prosecute suit indicates the "vigor with which the case will be pursued"); Dolgow v. Anderson, 43 F.R.D. 472, 494 (E.D.N.Y.1968) (court "must be assured that 'the representatives [will] put up a real fight' " (quoting J. Chafee, Some Problems in Equity 231 (1950)), rev'd on other grounds, 438 F.2d 825 (2d Cir.1971); cf. Falcon, 457 U.S. at 161, 102 S.Ct. at 2372.
 
 
 26
 The inquiry into whether named plaintiffs will represent the potential class with sufficient vigor to satisfy the adequacy requirement of Rule 23(a)(4) most often has been described to "involve[ ] questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and of whether plaintiffs have interests antagonistic to those of the rest of the class." Griffin v. Carlin, 755 F.2d 1516, 1532 (11th Cir.1985). Even where these two requirements are satisfied, however, named plaintiffs might not qualify as adequate class representatives because they do not possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative. See, e.g., Kline v. Wolf, 702 F.2d 400, 402-03 (2d Cir.1983); Armour v. City of Anniston, 89 F.R.D. 331, 332 (D.C.Ala.1980), aff'd, 654 F.2d 382 (5th Cir. Unit B Aug. 1981); 7A C. Wright, A. Miller and M. Kane, Federal Practice and Procedure, Civil 2d Sec. 1766 at pp. 308-10.
 
 
 27
 For similar reasons, some courts have found, as did the district court here, that Rule 23(a)(4) was not satisfied where the named plaintiffs demonstrated insufficient participation in and awareness of the litigation. See, e.g. Darvin v. International Harvester Co., 610 F.Supp. 255, 257 (S.D.N.Y.1985); Massengill v. Board of Educ., 88 F.R.D. 181 (N.D.Ill.1980). In following the lead of these cases, however, the district court appears to have applied a standard that does not vindicate the policies and purposes of Rule 23. Contrary to the district court's approach to the issue, adequate class representation generally does not require that the named plaintiffs demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class. Although the interests of the plaintiff class certainly would be better served if the named plaintiffs fully participate in the litigation, see, e.g., In re Goldchip Funding Co., 61 F.R.D. 592, 594-95 (M.D.Pa.1974), the economics of the class action suit often are such that counsel have a greater financial incentive for obtaining a successful resolution of a class suit than do the individual class members. See Deposit Guaranty Nat. Bank v. Roper, 445 U.S. 326, 338-39, 100 S.Ct. 1166, 1174, 63 L.Ed.2d 427 (1980) (plurality opinion). It is not surprising, then, that the subjective desire to vigorously prosecute a class action, which the district court here found missing in the named plaintiffs, quite often is supplied more by counsel than by the class members themselves. Obviously this creates a potential for abuse. See id. at 339, 100 S.Ct. at 1174. Yet the financial incentives offered by the class suit serve both the public interests in the private enforcement of various regulatory schemes, particularly those governing the securities markets, and the private interests of the class members in obtaining redress of legal grievances that might not feasibly be remedied "within the framework of a multiplicity of small individual suits for damages." Id.
 
 
 28
 As the district court aptly noted, a potential class is entitled to "more than blind reliance upon even competent counsel by uninterested and inexperienced representatives." In re Goldchip Funding Co., 61 F.R.D. at 594. For where the named plaintiffs "have abdicated their role in the case beyond that of furnishing their names as plaintiffs," the attorneys, in essence, are the class representative. Helfand v. Cenco, 80 F.R.D. 1, 7-8 (N.D.Ill.1977). Several district courts thus have properly denied class certification where the class representatives had so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys. See, e.g., Efros v. Nationwide Corp., 98 F.R.D. 703, 707 (S.D.Ohio 1983); Helfand v. Cenco, supra; see also 7A Wright, Miller & Kane at Sec. 1766 pp. 310-11 (the "inquiry into the knowledge of the representative is to ensure that the party is not simply lending his name to a suit controlled entirely by the class attorney.").
 
 
 29
 In concluding that the named plaintiffs in these cases do not satisfy the adequate representation requirement of Rule 23(a)(4), the district court noted that neither this court nor the Supreme Court has set forth standards for determining the adequacy of class representatives.[7] Because the issue of adequate class representation arises in a wide variety of contexts, it would be inappropriate for us to establish a standard for general application. We conclude, however, that in securities cases such as these, where the class is represented by competent and zealous counsel, class certification should not be denied simply because of a perceived lack of subjective interest on the part of the named plaintiffs unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case. To require less would permit attorneys essentially to serve as class representatives; to require more could well prevent the vindication of the legal rights of the absent class members under the guise of protecting those rights.
 
 
 30
 Although we conclude that the district court applied an erroneous standard in determining that the named plaintiffs would not be adequate class representatives, it would be inappropriate for us to make an independent application of the correct standard in this case. In contrast to the more strictly legal questions presented by the district court's characterization of the plaintiffs' claims in its rulings on the Rule 23(b)(3), the adequacy of class representation is primarily a factual issue that is best left for determination by the district court. Consequently, we remand the Rule 23(a)(4) issue for the district court to apply the standard we have set forth above.
 
 IV. CONCLUSION
 
 31
 For the foregoing reasons, the order of the district court is REVERSED IN PART, AFFIRMED IN PART, and REMANDED with instructions.
 
 
 
 *
 Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 Additional claims were asserted in some of the complaints. The district court's ruling on these other claims were not challenged on appeal. Accordingly, the district court's denial of class certification as to those claims will not be disturbed
 
 
 [2]
 A suit may be maintained as a class action only if the four prerequisites of Rule 23(a) are satisfied and, in addition, the case satisfies one of the requirements of Rule 23(b). See Fed.R.Civ.P. 23(b). In this case, there is no dispute that subsections (1) and (2) of Rule 23(b) do not apply. Rule 23(b)(3) permits class action treatment if:
 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
 
 
 [3]
 The Eleventh Circuit, in the en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981
 
 
 [4]
 In remanding to the district court, Shores instructed the court to "reconsider the maintainability of this action as a class action as to members of a properly defined class of Bond purchasers who did not ... rely [on the allegedly misrepresentative offering circular]." 647 F.2d at 472. This instruction should not be misconstrued as an indication that the fraud-on-the-market claim would be available only to those individuals who did not rely on the circular. The district court previously had determined that a Rule 10b-5(2) misrepresentation claim could be brought as a class action on behalf of a class of purchasers who had relied on the offering circular. The court of appeals recognized that any member of a class so defined necessarily would satisfy one of the elements of a 10b-5(2) claim and thus could recover if it were proven on a class-wide basis that the defendants knowingly made materially misleading statements in the offering circular and that the purchasers suffered losses as a result. See 647 F.2d at 468 (listing elements of 10b-5(2) misrepresentation claim). The court realized that, under the facts alleged in that case, these class-wide 10b-5(2) issues would be contained in the proof necessary for recovery under the 10b-5(1) and (3) fraud-on-the-market theory. See 647 F.2d at 468 ("[T]he Offering Circular was assertedly only one step in the course of an elaborate scheme."). Those purchasers who did not rely could recover, however, only by meeting the additional burden of proving, under the fraud-on-the-market theory, that the securities could not have been issued but for the fraud of the defendants. Thus, the instruction that the district court determine the maintainability of a separate class for purchasers who did not rely was based simply upon the recognition that, as a practical matter, those purchasers would have a greater factual burden to establish liability than would those who relied on the offering circular. The instruction did not imply, however, that those who had relied on the offering circular could not also recover under the fraud-on-the-market theory. To the extent that the district court on remand reached a different conclusion, see Shores v. Sklar, [current] Fed.Sec.C.Rep. (CCH) p 92,074 (N.D.Ala. July 30, 1986), we reject that court's interpretation of the en banc decision
 
 
 [5]
 The presence of arbitration agreements is relevant for another factor in determining the suitability of class treatment on the 10b-5 claims. After the district court's order was issued, the Supreme Court in Shearson/American Express v. McMahon, --- U.S. ----, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), upheld the enforceability of agreements requiring the arbitration of 10b-5 claims. Those purchasers whose 10b-5 claims are subject to arbitration thus could not be considered members of the class. In ruling on the motion for class certification, the district court did not determine whether the potential class members not subject to arbitration would be sufficient to satisfy the numerosity requirement of Rule 23(a)(2). The court should make this determination on remand
 
 
 [6]
 Under the Georgia law applicable to these diversity claims, see Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the standard of liability would be determined, as an initial matter, by the law of the state in which the purchaser acquired the security, not of the state from which the shares were sold. See Risdon Enterprises, Inc. v. Coleman Enterprises, Inc., 172 Ga.App. 902, 324 S.E.2d 738, 740 (1984) (explaining Georgia's lex loci delecti choice of law rule in tort cases); see also Zandman v. Joseph, 102 F.R.D. 924, 930 (N.D.Ind.1984) (Indiana's lex loci delecti rule "would require use of the law of the state where each class member suffered his or her pecuniary loss"). If a particular state does not have a controlling statute, however, the Georgia choice of law rule requires application of the common law as construed by the courts of Georgia. See Frank Briscoe, Inc. v. Georgia Sprinkler Co., Inc., 713 F.2d 1500, 1503 (11th Cir.1983); Risdon Enterprises, 324 S.E.2d at 741 (1984). Thus, although the law of Georgia might eventually be applied on some claims involving purchases made in other states, that could be determined only after the district court had fully surveyed the law of the states of purchase. Moreover, even if Georgia law would require application of its own common law rules to some claims involving purchases in other states, the law of Georgia could be applied consistent with due process only if the particular transaction had some significant relation to Georgia. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 105 S.Ct. 2965, 2980, 86 L.Ed.2d 628 (1985)
 
 
 [7]
 In support of its conclusion that the named plaintiffs in these cases are inadequate class representatives, the court cited Rothenberg v. Security Management Co., Inc., 667 F.2d 958 (11th Cir.1982). Rothenberg upheld the dismissal of a Rule 23.1 derivative shareholders' action where the named plaintiff had been found not to be an adequate representative of the other shareholders. In making this determination, the district court and the panel on appeal relied on factors similar to those relied upon by the district court here. Rothenberg, however, is not entirely apposite to the determination of adequacy of a class representative under Rule 23(a)(4). A derivative suit poses inherent conflicts between those minority shareholders who are bringing the suit and the majority shareholders whose administration is being challenged either directly or indirectly. See 7C C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 1833 at pp. 137-39. In contrast, a class suit by definition serves to benefit the members of the class. Consequently, a different degree of participation might well be required of a named plaintiff in a Rule 23.1 derivative than of a named plaintiff in a Rule 23 class action. The case before us does not involve a Rule 23.1 certification, and we express no opinion as to what the standard for such cases should be