Matthew FISCHLER, et al., Plaintiffs/Class Representatives,

v.

AmSOUTH CORPORATION, et al., Defendants/Third Party Plaintiffs,

v.

MARKETING ONE, INC., et al., Third Party Defendants.

No. 96–1567–CIV–T–17A.

United States District Court, M.D. Florida, Tampa Division.

Sept. 22, 1997.

Jonathan L. Alpert, Patrick B. Calcutt, Alpert, Baker & Calcutt, P.A., Tampa, FL, Christi C. Mobley, Craig G. Harley, Martin D. Chitwood, Appel Chitwood & Harley, Atlanta, GA, for Matthew Fishler.

Judy S. Hoyer, James, Hoyer, Newcomer, P.A., Tampa, FL, Alan Schulman, Jan M. Adler, Pamela M. Parker, Milberg, Weiss, Bershad, Hynes & Lerach, L.L.P., San Diego, CA, M. Clay Ragsdale, E. Ansel Strickland, Law Offices of M. Clay Ragsdale, Birmingham, AL, Steven E. Cauley, Steven E. Cauley, P.A., Little Rock, AR, for Louis D. Barge and Alice M. Barge.

Judy S. Hoyer, James, Hoyer, Newcomer, P.A., Tampa, FL, for Vickie B. Smith.

John R. Bello, Jr., Gibbons, Smith, Cohn & Arnett, P.A., Tampa, FL, for Third Party Defendants.

G. Calvin Hayes, Frederick Stewart Schrils, Holland & Knight, Tampa, FL, James J. Restivo, Jr., Thomas L. Allen, Gregory B. Jordan, Perry A. Napolitano, Reed, Smith, Shaw & McClay, Pittsburgh, PA, for Defendants.

### ORDER

KOVACHEVICH, Chief Judge.

This cause is before the Court on Plaintiffs' Amended Motion for Class Certification (Dkt. 87), and Defendants' response (Dkt. 92), and Appendix. The Court also has for consideration Plaintiffs' Motion for Leave to Reply, Defendants' Opposition, and Plaintiffs' Motion for Oral Argument.

The Court conducted oral argument on August 20, 1997. The Motion for Oral Argument is **granted** nunc pro tunc, August 20, 1997. Plaintiffs' Motion for Leave to Reply is **denied.**

This case involves an Amended Complaint which includes multiple counts. Count I includes violations of Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5. Count II includes violations of state law anti-fraud provisions, including Florida, Alabama, Georgia and Tennessee. Count II includes allegations of controlling person liability of AmSouth Bancorporation and the AmSouth Banks under Section 20 of the Securities Exchange Act of 1934.

I. Amended Motion for Class Certification

Rules 23 states:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

.     .     .     .     .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution of defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or

against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The Court notes that there is no dispute as to the issues of numerosity, commonality and adequacy of representation. The only question as to numerosity which the Court could not answer from the materials provided by the parties is whether any customer agreements require arbitration of any claims. This issue could have a significant effect on the numerosity requirement. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 (11th Cir.1987)

The Court will only address the disputed issues of typicality, the predominance of any questions of fact and law over common questions of fact and law, and the difficulties likely to be encountered in the management of a class action.

A. Typicality

■ Rule 23(a)(3) requires that Plaintiffs' claims and defenses have essentially the same characteristics as the claims of the Class as a whole. *Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir.1985). " [T]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Id.* A strong similarity in legal theories will satisfy the element of typicality. The Court notes that the issues of typicality and adequacy of representation overlap to a degree, and the Court perceives no difficulty with adequacy of representation in this case.

■ In this case, Plaintiffs have named Matthew Fischler and Louis and Alice Barge as Plaintiffs. Plaintiff Fischler's claim is that the "investment man" told Plaintiff that there was a penalty against interest only for early withdrawal from the annuity Plaintiff purchased. Plaintiff Fischler further alleges that the "investment man" did not timely provide Plaintiff with a buyer's guide to annuities and a contract summary, as required by Section 626.99(4), *Florida Statutes.*

Plaintiff Fischler also alleges that the written material provided later omitted to state that the surrender charge would reduce his principal. Plaintiff Fischler alleges that he would not have purchased the non–deposit investment product if he had known these facts.

The claim of Plaintiffs Louis and Alice Barge is that Plaintiffs were told Plaintiffs could get a better interest rate than they were getting on their savings account or CD's by an AmSouth employee. The AmSouth employee opened a joint account for Plaintiffs with an entity Plaintiffs thought was AmSouth Bank. The AmSouth employee sold the Barges 1,263.709 shares of the AmSouth Government Income Fund, at $10.00 per share. Plaintiffs claim they were led to believe that the product Plaintiffs were buying was as secure against loss of principal as a bank savings account or CD. Plaintiffs allege they were never told of the risks to their principal, the fees and expenses, or the other material facts. Plaintiffs allege that the AmSouth employee never gave them a prospectus or explained the salient points of the prospectus to them. Plaintiffs allege that the AmSouth employee never meaningfully disclosed that the AmSouth Government Income Fund was composed of highly volatile instruments that were acutely sensitive to interest rate fluctuations. Plaintiffs allege that the AmSouth employee did not disclose that the mutual fund had no track record, or that the AmSouth employee was paid more money to sell shares of AmSouth's proprietary mutual funds.

Plaintiffs allege that Plaintiffs would not have invested their money with AmSouth or bought the AmSouth Government Income Fund if they had been advised of the risks, fees and expenses, economic conflicts of interest, and other material facts. Plaintiffs sold their shares of the fund at a loss. Plaintiffs contend the failure to disclose the material facts caused their damages.

Plaintiffs allege that Defendants knew and exploited the bank customer relationship, and all Defendants engaged in a common, management–led scheme to sell non–deposit investment products to bank customers by not fully disclosing all material facts.

Plaintiffs contend that Defendants' liability in this case is premised on Defendants' failure to disclose material facts regarding the nature of non-deposit investment products, the fees and expenses attendant to the products, and the relationship between AmSouth Bank and its brokers, among other common omissions. Plaintiffs argue that the facts and evidence are virtually the same, and the claims and defenses will be typical.

Defendants argue that the claims of Fischler and the Barges do not bear any relation to the alleged class claims of lack of disclosure concerning FDIC insurance. Defendants further argue that Plaintiff Fischler's claim is not typical of those of customers who dealt with AmSouth Investment Services, or some other third party, rather than Marketing One. Defendants further argue that Plaintiffs have not established how their reliance is equal to the reliance of the class. Defendants further argue that the claims of those Plaintiffs who were unsophisticated cannot be typical of those who bought securities from AmSouth who were sophisticated.

Defendants argue that the requirement of typicality is not met.

After consideration, the Court concludes that the requirement of typicality has been met by the strong similarity in legal theories as to the claims and defenses of Plaintiffs in spite of factual distinctions. The distinctions do not place certain claims in a position antagonistic to other claims. The common theory is that Defendants used the goodwill of AmSouth Bank to lure unsuspecting bank customers into making investments believed to be guaranteed by the bank, and as secure against loss of principal as a savings account or CD.

## B. Predominance of Individual Issues Over Common Scheme

Plaintiffs have alleged that Defendants engaged in a common management-led scheme to sell non-deposit investment products to bank customers by not fully disclosing all the material facts. Plaintiffs identify the following common questions of law and fact:

1. Whether Defendants structured their non-deposit investment sales program in such a manner as to omit to disclose material facts:

2. Whether Defendants omitted to disclose material facts in connection with the purchase and sale of securities;

3. Whether Defendants failed to disclose adequately under the circumstances the distinction between AmSouth Bank and its brokerage affiliate, AmSouth Investment Services, Inc.;

4. Whether Defendants acted with scienter;

5. Whether the Class members suffered damages as a direct and proximate result of the Defendants' actions.

Plaintiffs argue that because of the existence of the centralized common scheme, there are no individual issues that will predominate over issues common to the Class.

Defendants argue that a number of individual issues predominate over the alleged common scheme to defraud, and these individual issues would cause significant manageability difficulties in a class action. The individual issues are:

1. Whether each Plaintiff received a misrepresentation or omission;

2. Whether each Plaintiff relied on an alleged misrepresentation;

3. Whether each Plaintiff was damaged, and if so, in what amount; and

4. Whether each Plaintiff has a timely claim.

## 1. Misrepresentation or Omission

Plaintiffs have characterized this case as an "omissions" case of securities fraud, and have argued that any misrepresentations made to Plaintiffs are merely cumulative to the omissions which form the basis of the alleged common scheme.

Defendants contend that this is not an "omissions" case in which Plaintiffs would be entitled to a presumption of reliance pursuant to *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).

As the Court said in *Walco v. Thenen,* 168 F.R.D. 315 (S.D.Fla.1996):

[The] restriction of the Affiliated Ute presumption of reliance to cases involving purely omissions is incorrect. The Supreme Court stated in Affiliated Ute that the presumption of reliance arises in cases involving "primarily" omissions. The Court interprets this language as meaning that the presumption of reliance can arise even if allegations of misrepresentations exist, as long as the case is primarily based on omissions. The word "primarily," as posed by the Supreme Court implies that some misrepresentations are commonplace in omissions cases, but they do not destroy the presumption of reliance if the case is based primarily on the omissions. The Court, however, does agree that the Affiliated Ute presumption is not available in mixed cases involving both omissions and misrepresentations. [Citations omitted.] Thus, the critical question here is whether this is a case involving primarily omissions, or whether this is a mixed case of omissions and representations.

Plaintiffs' case includes the following allegations. Plaintiffs were allegedly lured to consultations with investment salespersons by the omission that the salespersons were employed by a separate entity from the bank. The alleged scheme to persuade Plaintiffs to invest their money in various non-deposit accounts continued when the salespersons did not fully disclose all material facts as to the specific investments, including risk to principal, non-FDIC status, lack of track record, fees and expenses. Plaintiffs allege that commonly, bank customers received no prospectuses at the time of sale. Compliance and record keeping requirements were ignored, branches were not registered, brokers and bank employees were left deliberately unsupervised, with bank employees receiving enhanced compensation for selling proprietary funds, and account applications were filled out incorrectly, or not at all.

Defendants respond that this is a case of mixed omissions and misrepresentations, predicated on the following misrepresentations. Plaintiffs Barge and Fischler received signed disclosures as to their investments. Brokers wrote down sales charges in a misleading manner, told customers that investments were insured or guaranteed by AmSouth, gave fixed annuity disclosures to customers who purchased variable annuities, overstated the customer's rate of return, and made misleading statements to customers about nondepository investment products.

The Court has also carefully examined the Appendix, which contains a transcript of the class certification hearing, and other supporting materials as to the issue of class certification, in the *Kerr* case. The Court notes that there is some evidence of scripted materials as to the Series Six program of Defendants, which may support the existence of a management-led scheme primarily based on omissions as to certain investment products. The Court also notes the regulatory investigations that were undertaken as to Defendants. However, the Court finds that the evidence of any alleged central scheme is dwarfed by other evidence presented in the case, including the testimony and Affidavits of Defendants' witnesses, as well as admissions by Plaintiffs in the *Kerr* case that they received prospectuses and other written information as to their various investments.

The Court is not making any determination as to the strength of Plaintiffs' claims, but does not agree with Plaintiffs' characterization of this case as primarily a case involving omissions of material fact in a scheme to defraud. The Court does not agree that any alleged oral misrepresentations are cumulative to any alleged omissions. The Court concludes this is a case involving "mixed" misrepresentations and omissions.

## 2. Reliance

This case involves alleged misrepresentations by many different brokers to many different Plaintiffs. The Court further notes that this case also involves material omissions, and Plaintiffs may be entitled to the presumption of reliance as to any omissions. However, the presumption of reliance is a rebuttable presumption.

Since this case involves alleged omissions and misrepresentations by many brokers as to many different investment products, and information as to those products is widely available to the public from various sources, the Court finds the reasoning in *Martin v.*

*Dahlberg,* 156 F.R.D. 207 (N.D.Cal.1994) persuasive on this issue. "The diversity of sources of information, the diversity of messages generated by those interested in selling Dahlberg products, and the potential for differing reliance on varied information weigh strongly against class adjudication of the critical issues of reliance." Id. at 215.

The Court finds that *In re American Continental Corp./Lincoln Savings & Loan Securities Litig.,* 140 F.R.D. 425 (D.Ariz.1992), on which Plaintiffs rely, is factually distinct from the present case. The *Lincoln* case involved misrepresentations of bond salespersons who differed slightly in their presentation of the same misleading information, and information on the specific investment was not available to the public through other sources.

The Court also distinguishes *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718 (11th Cir.1987) on its facts. *Kirkpatrick* involved the sale of Petro–Lewis oil and gas income funds, not hundreds of different investment products. The complaints included two related but different courses of conduct. The complaints alleged that the defendants participated with Petro–Lewis in disseminating misleading prospectuses and in engaging in a standardized promotion by the individual brokers. The complaints also alleged that the defendants continued to sell and promote Petro–Lewis shares despite defendants' awareness or reckless disregard of Petro–Lewis severe financial difficulties. In *Kirkpatrick,* the Eleventh Circuit found that "In view of the overwhelming number of common factual and legal issues presented by plaintiff's misrepresentation claims, however, the mere presence of the factual issue of individual reliance could not render the claims unsuitable for class treatment." *Id.* at 724. In this case, there is no overwhelming number of common factual issues.

Plaintiffs have argued that *Andrews v. American Telephone & Telegraph,* 95 F.3d 1014 (11th Cir.1996), and *Castano v. American Tobacco Company,* 84 F.3d 734 (5th Cir. 1996), on which Defendants rely, are cases which are factually distinct from the present case. The Court agrees that there are some factual distinctions. As Plaintiffs argue, *Castano* involved a claims directed toward an entire industry, millions of claims, and a novel legal theory, as well as significant manageability issues. Further, the *Andrews* case involved many different claims of wrongdoing, and many different schemes, as well as the application of state law of all fifty states. Reliance was not the only issue in *Castano* and *Andrews.* However, the Court does note that the issue of reliance is addressed in those cases. In *Castano,* the Court said:

> According to both the advisory committee's notes to Rule 23(b)(3) and this court's decision in *Simon v. Merrill Lynch, Pierce, Fenner & Smith,* 482 F.2d 880 (5th Cir.1973), a fraud class action cannot be certified when individual reliance will be an issue.

*Id.* at 745. The Court is persuaded that individual issues as to reliance do predominate over the alleged common scheme in the present case.

3. Damages

This case involves the proof of damages of the many individual Plaintiffs as a result of the alleged omissions and misrepresentations in the sale of securities. This issue will require case–by–case determination, and weighs against certification of the class.

4. Statute of Limitations

The class period is between January 1, 1993 and August 12, 1996. The Court notes that AmSouth Bank operates branches in Alabama, Florida, Tennessee and Georgia. By the beginning of 1994, AmSouth operated at least 130 bank branches in North and Central Florida alone from which non–deposit investment products were sold. As of January 7, 1994, AmSouth managed $1.4 billion in mutual fund assets, half of which consisted of AmSouth's proprietary products. The determination of statute of limitations will necessarily involve the consideration of individual circumstances. The application of laws of several different states also is implicated because this is a multiple count complaint. However, the resolution of issues as to the statute of limitations does not necessarily preclude class treatment.

## C. Superiority

Many courts have held that class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, "since the effectiveness of the securities laws depend in large measure on the application of the class action device." *Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3d Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). "The interests of justice require that in a *doubtful case* ... any error, if there is to be one, should be committed in favor of allowing a class action." *Id.* "A class action [in a federal securities action] may well be the appropriate means for expeditious litigation of the issues, because a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to instigate litigation solely on his own behalf." *Green v. Wolf Corp.,* 406 F.2d 291, 296 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1985).

■ The determination of whether a class action is superior to individual actions is discretionary, and is primarily determined by considering "whether the class action is superior to, and not just as good as, other available methods of handling the controversy." *Coleman v. Cannon Oil Co.,* 141 F.R.D. 516, 529 (M.D.Ala.1992).

■ In considering the issue of superiority, the Court should consider the following factors: "[T]he interest of the members in pursuing individual actions, the extent and nature of the actions already commenced, the desirability of concentrating the litigation, and perceived difficulties in managing the class action format."

### 1. Individual actions

Assuming that the claims of the named class Plaintiffs are typical, Plaintiffs would be best served by the use of the class action, since the claims are small and medium-sized. However, the Court is not certain whether Plaintiffs' claims are subject to arbitration, which would provide a more economically feasible venue.

### 2. Other actions

One class action under Alabama law has already been started, and therefore this action will not include those claims. The Court does not know of any other actions which have already commenced.

### 3. Concentration of litigation

From Plaintiffs' point of view, it is desirable to concentrate the litigation in one forum. However, there is little to be gained in terms of judicial efficiency by a single trial on the existence of a common scheme given this particular factual situation, where time-consuming individual trials on reliance, damages and statute of limitations must follow.

### 4. Manageability

Manageability issues include the prospect of mini-trials on certain issues, choice of law determinations, and some scheme for sub-classification of class members. State law claims under Florida, Alabama, Tennessee and Georgia law are included. The present class definition poses significant manageability difficulties because it is over-inclusive. In light of these difficulties, the Court finds that a class action is not a superior method for the *fair* and *efficient* adjudication of this case.

The Court finds that individual issues of fact predominate over common questions of fact, and Plaintiffs have not established that class certification is a superior method of adjudication. Accordingly, it is

**ORDERED** that the Amended Motion for Class Certification (Dkt. 87) is **denied**. Plaintiffs' Motion for Leave to File Reply (Dkt. 106) is **denied**.