Abed MEDINE, Plaintiff,

v.

WASHINGTON MUTUAL, FA,
et al., Defendants.

No. 96–3362–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Nov. 10, 1998.

Alan H. Rolnick, Hanzman, Criden, Korge & Chaykin, P.A., Miami, FL, Alvin D. Lodish, Bilzin Sumberg, Dunn Price & Axelrod, LLP, Miami, FL, for plaintiff.

Alex Sabo, Morgan, Lewis & Bockius, LLP, Miami, FL, for defendant.

MIDDLEBROOKS, District Judge.

This Cause comes before the Court on Plaintiff's Renewed Motion for Class Certification, filed on January 26, 1998 ("Pl.Motion") (DE# 55). At Request of the Defendant, the Court held Oral Argument on this Motion on October 6, 1998. The Court has heard arguments of counsel, reviewed the responsive pleadings and the pertinent portions of the record, and is otherwise fully advised in the premises.

## I. Background

This case involves the sales of Sierra North American Government Fund securities to individuals who were customers of Great Western Bank ("the Bank") in Florida.[1] Abed Medine is the Named Plaintiff in this action, for the proposed class of "all persons who from August 8, 1993 through July 20, 1997 were deposit customers of a Great Western Bank branch in Florida who purchased shares of Sierra North American Government Fund from Great Western Financial Corporation, Great Western Investment Management Corporation, Great West-

---

1. Plaintiff filed on May 5, 1998 the Third Amended Class Action Complaint; this is now the relevant pleading stating the potential causes of action in this case (DE# 80). By this Court's Order

Dated August 18, 1998, Abraham Dov Grunhaus was withdrawn as Named Plaintiff and Abed Medine was substituted as Lead Plaintiff (DE# 98).

ern Financial Securities Corporation, and/or Sierra Investment Services Corporation through branch offices of Great Western Bank located in the State of Florida." In this case, Sierra North American Government Fund ("the Fund"), a Cayman Islands company, was selling funds available only to investors who were not U.S. citizens and/or residents.

Plaintiff alleges the Bank, the Fund, and other related entities engaged in a top-down, concerted, and uniform marketing scheme to defraud investors through inducing unsophisticated bank customers to invest in proprietary mutual funds that they otherwise would not have purchased. Furthermore, the funds were sold from locations set up in Bank branches, allegedly under circumstances that constituted violations of § 10b and § 20a of the Securities Exchange Act of 1934 and Rule 10b–5; breach of fiduciary duty to Plaintiffs and securities fraud in violation of Fla.Stat.Ch. 517; and unfair trade practices in violation of Fla.Stat.Ch. 501. See Amended Complaint.[2]

Plaintiff alleges that this case is based on (1) Defendant's uniform failure to disclose material information and (2) resulting uniform injury to Plaintiffs. Plaintiff alleges the following common issues of law and fact:

a. Whether Defendants violated § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder, by employing devices, schemes or artifices to defraud; by omitting to state material facts; and/or by engaging in transactions, practices or courses of business which operated as fraud in connection with the sale of securities;

b. Whether those Defendants who were controlling persons are liable as controlling persons pursuant to § 20 of the 1934 Act, 15 U.S.C. § 78t, for violation of § 10(b) of the 1934 Act and Rule 10b–5;

c. Whether Defendants violated Fla.Stat. § 517.301 of the Florida Securities laws by defrauding or otherwise wrongfully inducing

Plaintiff and the Class in to investing in the Fund;

d. Whether the Bank shared confidential information with the other Defendant entities concerning Bank customers without the written consent or knowledge of the customer and whether such practice violated Florida Statutes § 655.059;

e. Whether Defendants' marketing scheme and practices, including the sharing of confidential customer account information, amounted to an unfair and deceptive practice in violation of Florida Statutes Chapter 501, et seq.;

f. Whether Plaintiff and the Class are entitled to injunctive relief requiring Defendant Bank to stop disseminating their confidential banking information and requiring all oft he Defendants to cease their scheme to defraud;

g. Whether the sale of the Sierra proprietary funds to Bank customers through Defendants' marketing scheme and practices is indicative of a pervasive lack of fiduciary care and a breach of fiduciary duty by those Defendants owing fiduciary duty to Plaintiff and the Class;

h. Whether Plaintiff and the Class members are entitled to restitution, rescission, damages, and/or other relief.

The common elements of the material omission of fact are (1) the persons who solicited Class members in to buying these funds were not Bank employees looking out for their depositors, but were brokers who were under quotas to sell these proprietary funds; (2) the brokers were not adequately trained, supervised or knowledgeable to counsel individuals about merits of various investments; (3) a quota of Sierra funds sold had to be met for the broker to stay employed; (4) much higher fees and commissions were attached to Sierra funds than were attached to other funds; and (5) there was a system of financial incentives for all

---

**2.** In this complaint, Plaintiff alleges violations of both state and federal law, stemming from a common fraudulent scheme. The Court will consider these claims together for the purposes of class certification. This certification consider-

ation, however, is not in any way a judgment on the sufficiency or the merits of the claims. These questions will be considered on appropriate motion of the parties.

levels of Bank employees who steered customers to Sierra funds. Pl. Reply at 3.

## II Legal Standard

To maintain a class action, Plaintiff must satisfy the four prerequisites of Federal Rule of Civil Procedure 23(a) and also must demonstrate one of the elements of 23(b).[3] Rule 23 states:

> (a) Prerequisites to a Class Action. One or more members of a class may sue on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> ......
>
> (3) the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in one forum; (D) the difficulties likely to be encountered in the management of a class action.

■ Plaintiff bears the burden of establishing that each of the above elements is satisfied. The Court takes the factual allegations stated in the complaint as true; it is not appropriate for the Court to make an adjudication on the merits of the case at the class certification stage. *Walco Inv., Inc. v. Thenen,* 168 F.R.D. 315, 329 (S.D.Fla.1996). Though it is improper for the Court to assess the likelihood of success on the claims, the Court may consider the substance of the claim in evaluating whether the requirements of 23(b) are met by the allegations therein. *See Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 722 (1987). Because "the effectiveness of the securities law may depend in large measure on the application of the class action device," the interests of justice suggest any error in making the class certification determination, if there is to be one, should be committed in favor of allowing the class action to proceed. *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.1985) (internal citations omitted).

## III. Analysis

In this case, the Court finds as a predicate matter that Plaintiff has established three elements of Rule 23(a). First, Plaintiff has established that the numerosity requirement is met. Second, Plaintiff has shown there are common questions of law and fact.[4] Third, the Court finds that Plaintiff has established that the chosen representative fairly and adequately protects the interests of the class. The primary issues in dispute here are (1) that typicality is lacking, and (2) that individual issues will predominate.[5]

### A. Rule 23(a) Typicality

■ The Court first addresses the element of typicality. The named plaintiff must have claims and defenses that are typical of those of the class. Fed.R.Civ.P. 23(a)(3). The key inquiry in determining whether a proposed class has "typicality" is whether the class representative is part of the class and possesses the same interest and suffers the same injury as the class members. *See Kreuzfeld, A.G. v. Carnehammar,* 138 F.R.D.

---

**3.** Plaintiff proceeds under Rule 23(b)(3).

**4.** The Court further addresses the question of common issues as opposed to individual issues under the subsequent Rule 23(b)(3) analysis.

**5.** At argument the parties narrowed their arguments to the questions of Rule 23(a) element of typicality and the Rule 23(b)(3) element of whether common questions of law or fact predominate.

594, 599 (S.D.Fla.1991) (citing *East Texas Motor Freight System v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)). The district court should look to "whether the named representative's claims have the same essential characteristics as the claims of the class at large." *Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir.1985). The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named Plaintiff and other class members; typicality can be established by a strong similarity of legal theories despite factual differences. *Id. See also Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1336 (11th Cir.1984), *cert. denied,* 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985) (focusing on "nexus" between the class representative's claims or defenses and the common questions of law and fact among the class such that "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.").

In this case, Plaintiff Medine alleges a common overarching scheme to defraud based on omissions stated above. Defendant argues that Medine does not meet the typicality requirement because "Plaintiff's claims depend on the specific circumstances of his investment in the Fund [and] no basis exists to conclude that each putative class member received the same oral representations and relied on the various representations to the same degree." Def.Opp. at 14. The typicality inquiry asks whether the plaintiff's allegations share the same essential characteristics; here, Plaintiff alleges that he was subject to the same scheme as affected other class members. Defendant also discusses factual variations in the Plaintiff's circumstances, such as knowledge of investing or initiative in seeking out the investment. These factual inquiries remain disputed at this stage of the litigation; given the strong similarity of legal theories, purported factual differences do not defeat the typicality finding. The underlying question of the nature of the scheme, however, does not go to typicality but rather to whether this action is suited to class action treatment under the other prongs of 23(a) and 23(b).

Defendant's argument on this point is addressed below.

▮▮▮▮▮ Second, Defendant argues that Medine is not typical because he is subject to a unique defense, a statute of limitation bar to bringing his claims under both federal securities law and Florida securities law. Def.Opp. at 14–16. As stated above, typicality is not voided by the presence of specific defenses. Furthermore, Defendant maintains that the named plaintiff cannot represent the class because his claims are barred. Specifically, Defendant states that the relevant statutory period was triggered by inquiry notice based on the information that was included in the Explanation of Your Investment ("EOI") prospectus or in other "numerous documents" (that either were inconsistent with the information Plaintiff had relied on in making his investment or indicated that his investment was declining in value). On the evidence presented at this juncture in the case, Defendant has not demonstrated that Medine's claims are time-barred. As discussed by the Eleventh Circuit in *Bruschi v. Brown,* 876 F.2d 1526 (11th Cir.1989), though it may be the most prudent course for an investor to read the disclosure documents before deciding to invest, failure to do so, and thereby failure to uncover the inconsistencies between the oral and written representations, does not make the investor's reliance "unjustified as a matter of law." At 1529. Though some of the information contained in the documents would have indicated that the oral statements made by the broker were unreliable, the alternate determination is supported by a series of other factors including: the investor's lack of sophistication and experience (as alleged here); the position of the broker as more knowledgeable on the risks, and possibly in a fiduciary role to the investor; broker's statement that investor did not have to read the written materials; the broker's knowledge of the misrepresentation being perpetrated; and the broker's role in initiating the transaction. At 1530. *See also Kennedy v. Tallant,* 710 F.2d 711, 716 (11th Cir.1983) (rejecting appellant's argument that complaint was not timely filed, after submission of question to advisory jury).

■ Furthermore, the existence of a Prospectus containing omitted information is not absolute defense to omission. *See Bruschi,* 876 F.2d at 1529 (10b–5 case stating possible for investor to recover if misrepresentations investor relied on were oral and conflicted with contemporaneous written representations available to investor). In addition, the information which Plaintiff alleges was omitted was not necessarily included in the EOI (e.g., quotas and financial incentives, the complex relationships between the companies who are Defendants in this action). Thus, typicality is established in this case for the purposes of class certification and Rule 23(a) is satisfied.

## B. Rule 23(b) Predominance of Common Questions of Law or Fact

■ Plaintiff must also establish that the class is able to meet the standard set forth under Rule 23(b)(3). Plaintiff must show (i) that questions of law or fact common to members of the class predominate over any questions affecting only individual members, and (ii) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. In order to determine whether Plaintiff has met this test, the Court must address several questions.

■ In determining whether to certify a class, the Court does not address the merits of the underlying claims. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (stating the relevant considerations for certification are the requirements of the Rule itself and the factual allegations of the complaint, which must be taken as true). The "Eisen doctrine" should not serve, however, "to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements." *Love v. Turlington,* 733 F.2d 1562, 1564 (11th Cir.1984). The Court clearly does not evaluate the likelihood of success on the merits of the claim. *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 722–23 (11th Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988). But the Court has discretion to investigate beyond the allegations of the complaint in order to determine if common questions predominate over those affecting only individuals. *Walco Investments, Inc. v. Thenen,* 168 F.R.D. 315, 329–30 (S.D.Fla.1996). The Court takes notice of the thorough briefing and well-reasoned arguments on these issues.

■ Plaintiff alleges that the 23(b) requirement for the securities claims is met because this is an "omissions" case that allows Plaintiff to invoke the *Affiliated Ute* presumption of reliance. *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Defendant argues that this is a material misrepresentations case, or at least a "mixed" case involving both misrepresentations and omissions. The *Affiliated Ute* presumption is applicable even if allegations of misrepresentations exist, but only where the case is based "primarily" on omissions. *Id.* at 153, 92 S.Ct. 1456. *See, e.g., Kirkpatrick,* 827 F.2d at 722; *Fischler v. AmSouth Corp.,* 176 F.R.D. 583 (M.D.Fla.1997). Plaintiff presents a plausible claim on the facts for *Affiliated Ute* to apply. However, even if this case were characterized as "mixed" omissions and representations, Plaintiffs' claims can meet the requirements of 23(b)(3) based on the common course of conduct to misrepresent, by affirmative acts, and by omission, "standing mute" as to other material information. Plaintiff's case, as pled, can proceed even without the presumption of reliance, based on the single, common fraudulent scheme alleged. See *Kennedy v. Tallant,* 710 F.2d 711, 718 (11th Cir.1983); *Kirkpatrick,* 827 F.2d at 724; *Walco,* 168 F.R.D. at 333. While recognizing that some individual questions relating to the reliance element may be presented, these do not negate the predominance of the common questions of law and fact and do not preclude our conclusion on the facts alleged that a class action model is the superior method of resolving this case. Accordingly, we find that Plaintiff has met the requirements of Rule 23(b).

## IV. Conclusion

Based on the foregoing and upon consideration, it is hereby ORDERED AND AD-

JUDGED that Plaintiff's Motion for Class Certification is GRANTED.

It is further ORDERED AND ADJUDGED that Joint Motion for Enlargement of Time of the Scheduling Order is GRANTED.