THE THOMAS COUNTY BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al., Plaintiffs,

v.

CITY OF THOMASVILLE SCHOOL DISTRICT, Defendant.

No. 6:98–CV–63(WLS).

United States District Court, M.D. Georgia, Thomasville Division.

Aug. 4, 1999.

Laverne Lewis Gaskins, Valdosta, GA, Paul Dieseth, Minneapolis, MN, Thomas J. Henderson, Leslie Marie Gross, Washington, DC, for Thomas County Branch of the National Association for the Advancement of Colored People, Shernika Holton, Catherine Gatlin, Spencer Wilson, Sandra McIntyre, Mary Hill, Willie Mae Lewis, Gardenia Peeples, Mildred Barron, Sharon Bostick, All Plaintiffs.

Jerry A. Lumley, Macon, GA, Theodore Freeman, Maureen M. Middleton, Atlanta, GA, for Thomasville City Schools, City of Thomasville School District, defendant.

### ORDER TO CONDITIONALLY CERTIFY CLASS

SANDS, District Judge.

Presently before the Court in the above-entitled action is the plaintiffs' motion for class certification pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. After careful consideration of the record, the parties' respective arguments concerning the applicable law, and for the reasons discussed herein, the Court holds that the plaintiffs' motion should be granted, in part, and a class should be conditionally certified which may permit further discovery to proceed.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are the Thomas County Branch of the NAACP and parents of students enrolled in the Defendant Thomasville City School District ("the District"). Plaintiffs seek declaratory and injunctive relief against the District for allegedly violating the students' federal constitutional and statutory rights by establishing, preserving, and perpetuating a racially segregated and unequal education system. Plaintiffs allege that the District presently enforces policies and practices which segregate black students from white students and systematically afford the latter relatively superior instructional re-

sources in its six "regular" schools and two "specialized" schools. Am. Compl. ¶¶ 19–21.[1] Plaintiffs have pled several categories of alleged race discrimination by the District, namely: Segregation and inequality in the elementary schools, ¶¶ 20–25; segregation and inequality in the middle school, ¶¶ 26–30; segregation and inequality at the high school, ¶¶ 31–36; racial segregation of the District's gifted programs, ¶¶ 38–40; racial segregation of the District's special education programs, ¶¶ 41–43; racial segregation in student activities and awards, ¶¶ 44–46; and segregation and inequality in student discipline, ¶¶ 48–50. Plaintiffs seek entry of a permanent injunction which "requires the District to disestablish, in all respects, the racially segregated and unequal school system that exists in the City of Thomasville School District," and which specifically mandates that the District desegregate its buildings and facilities, instructional resources and materials, "discriminatory implementation of existing disciplinary provisions," and all student activities. Am. Compl. at 25, Prayer for Relief ¶ 4.

On April 9, 1999, the plaintiffs filed the instant motion for class certification. Shortly thereafter, on April 30, 1999, the plaintiffs filed a motion for leave to amend their complaint. Plaintiffs sought to amend their complaint to remove three individuals as parties and add three individuals to take their place as class representatives.[2] At the hearing held on May 14, 1999, the defendant stated that it had no objection to the plaintiffs' motion to amend. After review of the motion and proffered amendments, and noting the absence of any objection by the defendant, the Court granted the plaintiffs' motion. Accordingly, the Court has considered the plaintiffs' motion for class certification in light of the amendments adding new parties, including the declarations filed by each of the new plaintiffs.

# DISCUSSION

## I Plaintiffs' Standing to Sue

At the outset of its response to the plaintiffs' motion, the District has challenged the standing of each of the individual plaintiffs in this case. The District contends that none of the plaintiffs can demonstrate that his or her child has suffered any injury because of any allegedly racially discriminatory policies and practices enforced by the District.

 Article III of the Constitution requires that a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief" in order to invoke the exercise of federal jurisdiction. *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Article III bars a federal court from asserting jurisdiction over an action in which a litigant has raised another person's legal rights because the relief designed to redress the alleged unlawful conduct would not properly lie with that litigant; by its judgment, the federal court would resolve a would-be plaintiff's claim, rather than an actual case or controversy as the Constitution demands. As a threshold matter, a plaintiff seeking to invoke the jurisdiction of a federal court to resolve his or her case must allege that the defendant's conduct has, in fact, caused a "distinct and palpable" injury to him or her. *Id.* (citations and quotations omitted).

 Apart from the allegations in the complaint, the District contends that the plaintiffs' own testimony shows that none has standing to recover for any claims of unlawful race discrimination by the District in the education of his or her child. The District has proffered excerpts of testimony, such as the following from Shernika Holton ("Holton"):

Q. Has [your daughter] had any problems since she's been enrolled in Scott [Ele-

---

1. The District operates one high school, Thomasville High School, one middle school, MacIntyre Park Middle School, four elementary schools, Douglass, Harper, Jerger, and Scott Elementary Schools, one pre-kindergarten program, and one alternative school program. Am. Compl. ¶ 19; Am. Ans. ¶ 19.

2. Specifically, the plaintiffs sought to remove Gardenia Peeples, Catherine Gatlin, and Mildred Barron, and in their place, add Gladys Shotwell, Jennifer Hightower, and Evelyn Wilkerson.

mentary, the allegedly identifiably black school]?

A. No.

Q. And based on your contacts with your contacts with Ms. Parks [Courtney's teacher], are you satisfied with her as a teacher? Do you not like her as a teacher, or what are your feelings?

A. I'm satisfied.

Def.'s Br. Opp. Pls.' Mot. Class Cert. ("Def.'s Br. Opp.") at 8.

In response, each of the individual plaintiffs insists that he or she has suffered a distinct and palpable injury that entitles them to recover injunctive relief to mandate that their own children receive educational benefits equal to white students in the District. Plaintiffs direct the Court to consider other testimony by each of the individual parents which shows the particular forms in which the District has deprived his or her child of certain instructional resources by enforcing one or more of its policies or practices. Pls.' Reply at 3–8. Holton, for instance, directs the Court to consider other portions of her testimony which she contends show that she does, in fact, have standing due to the District's enforcement of policies which have denied her choice to enroll her daughter in Jerger Elementary School, which is closer to her home and work. Holton Dep. at 15.

Similarly, Spencer Wilson ("Wilson") contends that he has standing in this case because "his children have been victimized by segregated classrooms and low levels of academic instruction," as well as experience of the District's attempt to refer his daughter to a special education program. Pls.' Reply, citing Wilson Dep. at 39–42, 44, and 51. Wilson has also testified about his experience in being rebuffed when he inquired about enrolling his children in Jerger. Wilson Dep. at 73–74.

Plaintiff Mary Hill ("Hill") has testified that she enrolled her son at Jerger school, yet received the distinct impression that his teacher did not appreciate her son in his class. Hill has explained that the teacher would ignore her and her son, and would often discipline her son by pulling him out of class and sending him to the principal's office when he "would talk or do anything that childrens [sic] his age would do." Hill Dep. at 23. Nevertheless, Hill explained that she preferred to enroll her son in Jerger because it offered newer resources and materials than Douglas.

The Court also finds that Sandra McIntyre ("McIntyre") testified about the experiences that her children encountered at Douglas Elementary School. McIntyre testified about how her children were "not properly prepared" to qualify for the program for gifted students, which she attributes to the set of inferior materials and less experienced teachers assigned to Douglas, in relation to Scott and Jerger. McIntyre Dep. at 34–36.

Sharon Bostick ("Bostick") has testified about the District's racial discrimination against her son in the practices and policies regarding discipline. Bostick states that the teacher has imposed in-school suspension, without homework, as a form of discipline for her son, yet she has never heard of a comparable incident in which a white student was similarly disciplined. Bostick explains that this is a form of discipline by which the teacher effectively removed him from his classroom and deprived him of receiving his lesson. Bostick Dep. at 61.

The Court further finds that Willie Mae Lewis ("Lewis") has testified that her daughter "missed a whole year" of learning because the District did not offer challenging courses for her in her sixth grade class. Consequently, she has explained that her daughter struggled with courses in the seventh and eighth grades, and she has hired a tutor "to bring her up to where she needs to be." Lewis Dep. at 27, 41–42.

Finally, each of the three plaintiffs who were added in the amended complaint has submitted a declaration which presents evidence to support their respective claims for the injuries suffered by their children. Gladys Shotwell ("Shotwell") states, for instance, that "the District never allowed Nikky [her daughter] to enter the gifted program during the three time that she was tested," despite being an A-student, and did not inform her that Nikky could satisfy the

requirements for the creativity portion of the exam by submitting a creative project. Shotwell Decl. ¶ 7. Shotwell also claims that Nikky has been singled out (of class consisting predominantly of white students) for punishment several times. *Id.* ¶ 14. Evelyn Wilkerson ("Wilkerson") states that the District did not offer her a choice of classes in which to place her children or informer as to how the school would assign her children to certain classes. Wilkerson Decl. ¶ 4. Wilkerson states that the school placed her child "in a math class with less meaningful curriculum content than the predominantly white math class" at Jerger. *Id.* ¶ 7. Wilkerson also states that a guidance counselor initially deterred her son from taking the SAT exam, yet relented "[o]nly after a newspaper article came out about black students being steered away from taking the SAT." *Id.* ¶ 14. Jennifer Hightower ("Hightower") declares that the District did not offer her a choice of classes in which to place her children or informer as to how the school would assign her children in certain classes. Hightower Decl. ¶ 3. Hightower states that her son, who has been identified with a specific learning disability, was assigned to the wrong classes "receiving inferior instruction, and his class schedule was not corrected until after [she] met with various teachers and administrators." *Id.* ¶ 8. Hightower further declares that her son "was strongly discouraged and ultimately denied the opportunity to take [college preparatory courses]" at Thomasville High School. *Id.* ¶ 9.

The Court finds that the complaint presents sufficiently well-pleaded allegations to show that each of the individual plaintiffs' children has suffered certain injuries in their respective educational experiences in the District's schools. After careful review of the record, as outlined above, the Court finds that the plaintiffs' own testimony provides enough evidence to support their respective claims about the injuries to their children as a result of the District's allegedly racially discriminatory policies and practices.

## II Class Certification under Rule 23(b)(2)

The individual plaintiffs propose to represent a "class consisting of all present and future parents or guardians of African American children enrolled or eligible to be enrolled within the Thomasville City School District." Pls.' Mot. Cert. Class at 1; Pls.' Mem. Supp. Mot. Cert. Class ("Pls.' Mem.") at 2. More specifically, the plaintiffs seek certification of a class under Rule 23(b)(2) for declaratory and injunctive relief aimed to end the District's "discriminatory practices and policies and appropriate remedial steps to restore the proposed plaintiff class to the position they would have obtained in the absence of discrimination." *Id.* at 18.

■ Rule 23(a) requires that the plaintiffs first satisfy four prerequisites to maintain their action against the District as representatives of the proposed class: (1) the class must be so numerous that joinder of all members is impracticable; (2) questions of law or fact are common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Plaintiffs who seek certification as class representatives carry the burden of proving that they can satisfy each of the four initial requirements. *Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451, 456 (11th Cir.1996). Of course, the Court is authorized to determine only whether the plaintiffs have demonstrated that they have satisfied the provisions of Rules 23(a) and 23(b)(2). *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974); *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 722–24 (11th Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 421 (1988). A motion for class certification does not present an occasion for the Court to inquire further into the merits of the case, and little of the complex and varied issues which may be involved in this case—with respect to any party—is presently before the Court.

### 1. Numerosity

■ Plaintiffs contend that the number of parents of schoolchildren who have been and will be affected by the policies enforced by the District is more than two thousand, and argue that "this fact dictates that the numer-

osity requirement is conclusively satisfied." Pls.' Mem. at 4.[3]

The District argues that the plaintiffs' mere allegation of the number of persons who may qualify for the class is insufficient to satisfy the numerosity requirement of Rule 23(a). Def.'s Br. Opp. at 14. The District directs the Court to the authority of the decision by the Court of Appeals for the Eleventh Circuit in *Evans v. U.S. Pipe and Foundry Co.*, 696 F.2d 925 (11th Cir.1983). In that case, the Eleventh Circuit vacated the decision of the district court to deny class certification to a plaintiff who sought to represent a class of employees against whom the defendant company had discriminated against because of their race. The Eleventh Circuit explained that "[a]lthough mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class." 696 F.2d at 930. The Eleventh Circuit further suggested, however, that "where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)." *Id.* Similarly, in another case cited by the District, Def.'s Br. Opp. at 15, the Court of Appeals for the Fifth Circuit has instructed that the proper focus of analysis under Rule 23(a)(1) is "whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir.1981).[4]

There is no established threshold figure for determining whether a proposed class satisfies the numerosity requirement, yet the Eleventh Circuit has explained that "generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v.*

*American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986), *cert. denied* 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986) (quotation and citation omitted). Even if the ultimate figures are considerably lower than the plaintiffs' estimate, the Court takes judicial notice of the fact that the number of people who would comprise a class of *"all present and future parents or guardians of African American children enrolled or eligible to be enrolled within the Thomasville City School District,"* Pls.' Mot. at 1 (emphasis added), would amount to a substantial figure. Fed.R.Evid. 201(b)(1)-(2). The Court finds that the District's allegedly discriminatory policies and practices may implicate a substantial number of parents such that joinder of all members would be impracticable. Particularly at this early stage of the proceedings, wherein the key issues broadly encompass several of the District's institutions, policies, and programs, the Court holds that the number of persons in each class is so numerous as to satisfy the prerequisite of 23(a)(1).

### 2. Commonality

■ The plaintiffs argue that they share common issues of both fact and law with the proposed class. In addition to the main question of fact as to whether the District's schools are segregated by race, the plaintiffs contend that the issues of fact concerning "the operation and effect of the District's Freedom of Choice plan" and assignment of school personnel and students to particular schools are common to them and the members of the class more generally. Pls.' Mem. at 7. Furthermore, the plaintiffs argue that their complaint presents questions of law in common with the proposed class, such as whether the District has violated the Fourteenth Amendment to the Constitution, as well as several federal statutes, by maintain-

---

**3.** In their Reply Memorandum, the plaintiffs contend that their initial assertion that the proposed class "numbers more than two thousand," Pls.' Mem. at 4, is a reasonable estimate in light of their allegation that the District's has discriminated against students in all schools, programs, and "related policies and practices." Pls.'s Reply at 9, n. 9. Furthermore, the plaintiffs explain that they "acquired the 2,500 figure from the '1997–98 Georgia Public Education Report Card.'" *Id.* Notwithstanding their claims con-

cerning the relevancy of data contained in such a report, none of the facts which may emerge from this report are tendered in an admissible form.

**4.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), the Court of Appeals for the Eleventh Circuit adopted as precedent all of the former decisions of the former Fifth Circuit decided prior to October 1, 1981.

ing a racially segregated school system. *Id.* at 8–9.

The District rejects the plaintiffs' characterization of their respective claims as common to one another, and contends that each class member is distinct, particularly in light of his or her particular educational history. The District argues that "because of the unique and individual nature of the claims, each individual will prevail only upon an individualized showing of discrimination." Def.'s Br. Opp. at 16–17.

Rule 23(a)(2) requires the plaintiffs to show that "there are questions of law or fact common to the class." The Eleventh Circuit has interpreted this provision to mean that "[t]he claims actually litigated in the suit must simply be those fairly represented by the named plaintiffs." *Cox, supra,* 784 F.2d at 1557. The claims presented by the plaintiffs' Amended Complaint are whether the policies and practices enforced by the District unlawfully segregate students on the basis of their race in assignments to certain schools, classes, and programs, as well as the provision of key instructional resources, in violation of the Constitution and several federal statutory provisions. The Court finds that each of the individual plaintiffs shares one or more of these claims with the proposed class, chiefly by virtue of their common race, as the plaintiffs have alleged in the Amended Complaint. The Court further finds that each of the individual plaintiffs has presented evidence of his or her child's experience in the District's schools in connection with one or more of the allegedly racially discriminatory practices, such as school or class assignments and denial of access to certain resources (the District's program for gifted students, for example). Insofar as the plaintiffs have alleged that the District systematically segregates students according to race at each level of education, the Court finds that the plaintiffs have satisfied their burden of showing that their claims present common issues of law. *See Nelson v. United States Steel Corp.,* 709 F.2d 675, 679–80 (11th Cir.1983) (explaining that the plaintiff is obligated to show "in at least a preliminary fashion," the requisite commonality). Accordingly, the Court holds that the plaintiffs have sufficiently demonstrated that their claims of law or fact are common to each respective class as to satisfy the prerequisite of Rule 23(a)(2).

### 3. Typicality

The individual plaintiffs contend that their claims are typical of those of the proposed class because the District's allegedly discriminatory policies and practices "injure all members of the plaintiff class in substantially the same manner and give rise to violations of federal constitutional and statutory rights that are similar for all members of the plaintiff class." Pls.' Mem. at 12. The plaintiffs contend, for instance, that all of the individual plaintiffs have children who have been subjected to racially discriminatory school or class assignments in the District. *Id.* Similarly, the plaintiffs contend that several of the parents, namely, McIntyre and Bostick (and Shotwell), "have children who have been excluded from the gifted program," and impliedly argue that they qualify as class representatives because the District has maintained a practice that discriminated against their children because of their race in a way that is typical of other members of the proposed class. *Id.*

As discussed above, the District contends that each of the individual plaintiffs presents a unique claim of unlawful discrimination, particularly in light of each student's own educational or disciplinary history (or both). Indeed, the District seizes on the plaintiffs' own statement that there are " 'varying factual circumstances underlying individual class members' claims,' " Def.'s Br. Opp. at 15, quoting Pls.' Mem. at 11, to support its argument that the individual plaintiffs here do not present claims of discrimination that are typical of those that may be shared by the class.

Rule 23(a)(3) requires the plaintiffs to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The prerequisite of Rule 23(a)(3) is satisfied if the plaintiffs show a sufficient nexus between the claim(s) of the class representative and the common questions of law or fact which unite the class. The Eleventh Circuit has ex-

plained that "[t]ypicality, however, does not require identical claims or defenses. A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985), *see also Andrews v. American Tel. & Tel. Co.*, 95 F.3d 1014, 1022–23 (11th Cir.1996) (concluding that the class representative's claims was typical of the kind of harm suffered by the class members, notwithstanding the wide variety of 900–number programs allegedly implicated in the suit). In the instant case, the respective claims raised by the individual plaintiffs share certain key features with the respective claims shared by members of the proposed class generally.

■ After close review of the plaintiffs' own allegations of fact in light of the claims asserted in the Amended Complaint, the Court finds that the individual plaintiffs have alleged, and moreover have tendered testimony, which shows that the District's allegedly racially discriminatory practices would be fairly comparable to the experiences of members of the proposed class. The Court finds, for instance, that Wilson's alleged experiences with the District's purported policies or practices in connection with assigning students to certain schools and referring them to special education programs would embrace the kinds of claims which may be shared by other members of the class. At this stage of the proceedings, the Court cannot discern any basis upon which to conclude that the claims asserted by the individual plaintiffs' are so markedly distinct by virtue of "varying factual circumstances" which may form the predicates to their claims that they cannot serve as representatives for the class. Accordingly, the Court concludes that the plaintiffs have met their obligation of showing that their claims are sufficiently close to the types of claims shared by the members of the proposed class as to satisfy the prerequisite of 23(a)(3).

### 4. Adequacy of Representation

■ Lastly, Rule 23(a) requires the plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class" in order to proceed on behalf of the proposed class. The Eleventh Circuit has explained that this provision imposes upon the Court the responsibility of reviewing the "forthrightness and vigor" of the proposed representatives, including whether the representatives' counsel have demonstrated sufficient experience and abilities to prosecute the claims of the class. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir.1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 421 (1988).

■ The District contends that the individual plaintiffs cannot adequately represent the interests of the class because their own claims are atypical and uncommon to other parents of children enrolled in the District's schools. Def.'s Br. Opp. at 17. Apart from these objections which reiterate the bases for its opposition to the plaintiffs' qualifications under other provisions of Rule 23(a), the District has not articulated any independent reasons why the named plaintiffs and their chosen counsel may not vigorously protect the interests of the proposed class.

The plaintiffs have represented to the Court that "[n]o conflicts of interest exist between the class representatives and other class members," and "have no special or unique affiliation with class counsel." Pls.' Mem. at 14–15. Furthermore, plaintiffs have represented that their attorneys have developed extensive experience in litigating complex cases, and more particularly, civil rights actions challenging racially segregated schools. *Id.* at 15–16. The District has not challenged these assertions.

The Court finds that the proposed representatives have been sufficiently diligent and capable of representing the interests of the proposed classes. Moreover, the Court cannot discern any conflicts that the individual plaintiffs may have with members of the proposed class. The Court further finds that the plaintiffs' counsel has demonstrated sufficient experience and ability to adequately protect and advance the interests of the

members of the class, and are not adverse to their interests. After review of the record as it exists at this stage of the litigation, the Court holds that the interests of the classes are adequately and capably represented by the class representatives and counsel as to satisfy the prerequisite of 23(a)(4).

### 5. Class Action Maintained Under Rule 23(b)(2)

█ Rule 23(b)(2) provides that an action may be maintained as a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Plaintiffs assert that this case is the epitome of a 23(b)(2) class action because "the [District] has acted in a manner generally applicable to the class in subjecting African American children to separate and unequal education." Pls.' Mem. at 18. The plaintiffs insist that "at the core of all of the allegations is a challenge to a school system marked by racially separate, unequal education infecting every aspect of the system," notwithstanding the various forms by which the District's allegedly racially discriminatory policies or practices may manifest themselves. *Id.*

The District claims that this suit cannot be maintained under Rule 23(b)(2). The District directs the Court to *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976), in which the Court of Appeals for the Sixth Circuit held that the plaintiff satisfied the prerequisites for class certification with respect to his claim that the defendant enforced policies and practices which discriminated against minority employees due to their race in awarding promotions to salaried positions at its Inland Division, in Dayton, Ohio. In reaching that decision, the court explained that "[l]awsuits alleging class-wide discrimination are particularly well suited for 23(b)(2) treatment since the common claim is susceptible to a single proof and subject to a single injunctive remedy." *Id.* at 525. Seizing upon the Sixth Circuit's conclusion that the plaintiff's claim can be demonstrated through a "single proof" and redressed by a "single injunctive remedy," the District focuses on the alleged factual differences between the class members and argues that the plaintiffs have not shown that "there are 'grounds generally applicable to the class.'" Def.'s Br. Opp. at 18. The District impliedly asserts that the plaintiffs' causes of action can only be shown by varied forms of proof and will require several forms of injunctive relief. Such a conclusion appears to be an unwarranted interpretation of Rule 23(b)(2), especially in light of the Sixth Circuit's decision in *Senter, supra,* to reject a similar challenge by the defendant. 532 F.2d at 523–24 (rejecting the defendant's characterization of the case "as a collection of 'highly individualized claims of black persons' and therefore not appropriate for class treatment"). Indeed, the Sixth Circuit sustained certification of the class of minority employees who showed that they were subjected to unlawful race discrimination through several devices, such as the foreman's subjective evaluation of employees and the absence of an established means for posting notices of supervisory positions, which together operated to deny them equal opportunities for advancement to salaried positions. *Id.* at 528–29.

The central issue with respect to certification under Rule 23(b)(2) is whether the plaintiffs have shown that the District "has acted or refused to act on grounds *generally* applicable to the class," rather than uniformly applicable, and in such a way that declarative or injunctive relief can be tailored to redress the plaintiffs' cause(s) of action. Plaintiffs' allegations of systemic or District-wide policies or practices which violate the civil rights of a group of persons are precisely the kinds of claims which can be fairly adjudicated as a class action under this provision, notwithstanding some particular considerations that invariably influence how such policies or practices may ultimately affect an individual student. *Senter*, 532 F.2d at 524; *see also, Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2nd Cir.1997) (rejecting the defendants' contention that "due to the unique circumstances of each plaintiff's experience with the child welfare system, the defendants have not act-

ed on grounds generally applicable to the class"). Upon review of the allegations raised in the amended complaint, including the plaintiffs' prayer for declaratory and injunctive relief, and the record as outlined above, the Court concludes that the plaintiffs have satisfied their burden of showing that this suit may proceed against the District as a class action under Rule 23(b)(2).

## DEFINITION OF CLASS AND FURTHER PROCEEDINGS

Because the plaintiffs have made a sufficient showing for each of the requisite elements under Rule 23(a) and 23(b)(2), the Court finds conditional certification to be a lawful and equitable course by which to conduct proceedings in this action. The class conditionally certified shall consist of all present and future parents or guardians of African American children enrolled or eligible to be enrolled within the Thomasville City School District. The Court expressly reserves issuing a final ruling with respect to a class consisting of *all future* parents or guardians of African American children enrolled or eligible to be enrolled within the District until such time that such action is warranted by the evidence in the record of the case. The Court certifies the class upon condition that the plaintiffs supplement their response to the Court's Mandatory Interrogatory No. 1 with a *detailed* factual statement of their contentions, including a statement of their particular claims as to which policy(ies) or practice(s) the District has enforced in violation of the Constitution and other federal statutory provisions, as alleged in the Amended Complaint.

Mindful that certification of the class may entail certain difficulties in these proceedings, the Court stresses that the Court will reexamine the key issue(s) related to certification if necessary. After the parties have developed the record and are more fully informed about the bases for and implications of their respective claims and defenses, the Court will entertain any motion(s) from any party to reconsider, amend, or otherwise modify this Order conditionally certifying the class.

The Court has inquired about the need to notify other members of the class who are presently absent, as well as undertake certain measures to ensure that potential intervenors are fairly apprised of the claims and defenses embraced in this action and may state their interests on the record of these proceedings.

To ensure that these key issues may be timely raised and resolved, the Court makes the following modifications to the discovery and scheduling order:

1. The parties shall submit their respective suggestions or proposals concerning the form(s) of notice, if any, which may be provided to other potential, absent members of the class **NO LATER THAN Friday, August 20, 1999.**

2. Plaintiffs shall supplement their response to the Court's Mandatory Interrogatory No. 1, as discussed herein, **NO LATER THAN Friday, January 14, 2000.**

3. Any motion by another party to intervene shall be filed **NO LATER THAN Friday, February 4, 2000.**

4. Any motion(s) to amend, reconsider or otherwise modify this Order, including any motion(s) to divide the class into subclasses, Fed.R.Civ.P. 23(c)(4), *for the purposes of trial* shall be filed **NO LATER THAN Monday, May 22, 2000.** Nothing in this Order shall be construed or interpreted to prevent the parties from filing any motion amend, reconsider or otherwise modify this Order prior to that date or after a full trial on the merits of the case, as justice may require.

## CONCLUSION

As noted above, the Court **ORDERS AND ADJUDGES** that the Plaintiffs' Motion for Leave to File Amended Complaint (Doc. No. 43) should be, and hereby is, **GRANTED.**

For the reasons discussed above and consistent with the terms set forth herein, the Court **ORDERS AND ADJUDGES** that Plaintiffs' Motion for Certification of Class Pursuant to Rules 23(a) and 23(b)(2) (Doc. No. 30) should be, and hereby is, **GRANT-**

**ED**, and upon condition, as set forth in this Order.