In re PIEDMONT OFFICE TRUST, INC. SECURITIES LITIGATION.

Civil Action No. 1:07–CV–2660–CAP.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 10, 2010.

The clerk shall terminate the motion (doc. 222) on the docket.

Alexandra R. Silverberg, Lawrence P. Kolker, Wolf Haldenstein Adler Freeman & Herz, Aya Bouchedid, Christopher J. Keller, Joseph V. Sternberg, Lawrence A. Sucharow, Labaton Sucharow LLP, New York, NY, Gregory E. Keller, Chitwood Harley Harnes, LLP, Great Neck, NY, Jack Timmony, Thomas C. Michaud, Vanoverbeke Michaud & Timmony, P.C., Detroit, MI, Kimberly M. Donaldson, Kimberly Litman Kimmel, Nicholas E. Chimicles, Chimicles & Tikellis, LLP, Haverford, PA, Krissi T. Gore, Meryl W. Roper, Robert Ware Killorin, Chitwood Harley Harnes, Atlanta, GA, for Plaintiffs.

Bethany Marie Rezek, Michael J. Cates, Michael R. Smith, King & Spalding, LLP, Tony Glen Powers, Joshua Paul Gunnemann, Julie M. Reed, Kimberly Lillian Myers, Stefanie H. Jackman, Rogers & Hardin, Atlanta, GA, for Defendants.

## *ORDER*

CHARLES A. PANNELL, JR., District Judge.

This action is before the court on the plaintiff's motion for class certification [Doc. No. 59].

## I. FACTUAL BACKGROUND

This action was filed on October 25, 2007 [Doc. No. 1], as a purported class action against Piedmont Office Realty Trust, Inc. ("Piedmont"), and certain Piedmont directors and officers. The plaintiffs, Piedmont shareholders, filed the amended complaint on May 19, 2008. The claims in the amended complaint pertain to two sets of filings made by the defendants with the Securities and Exchange Commission ("SEC").

Count I is brought pursuant to Section 14(e) of the Securities Exchange Act of 1934 ("Exchange Act") and alleges that the defendants made omissions of material information in recommendations that shareholders not sell their shares in response to two tender offers made in May and June 2007. Count II alleges that the defendants disseminated proxy solicitations in violation of Section 14(a) of the Exchange Act. Counts III and IV allege breaches of fiduciary duty under state law.

Piedmont, a Maryland corporation with its principal executive offices located in Norcross, Georgia, is primarily engaged in the acquisition and ownership of commercial real estate properties. It is a public unlisted real estate investment trust ("REIT"), which means that (1) it is public because it is registered with the Securities and Exchange Commission ("SEC"), can sell to the investing public rather than only to "qualified investors," and is required to file reports with the SEC; and (2) it is unlisted because its securities are not listed on a national stock exchange. Because of this business model, Piedmont had a fixed life. According to the original Articles of Incorporation, if its stock

was not listed on a national securities exchange by January 30, 2008, Piedmont would be required to sell its assets and distribute the proceeds.[1]

On May 25, 2007, Lex–Win Acquisition, an entity unaffiliated with the parties in this matter, offered Piedmont's shareholders the opportunity to tender an aggregate of up to 5.2% of the company's outstanding shares at $9.00 net per share. On June 12, 2007, Lex–Win increased this offer to $9.30 per share for an aggregate of up to 9.3% of the company's outstanding shares.

Piedmont and its board of directors responded to both tender offers in filings with the SEC on June 8, 2007, and June 18, 2007, recommending that Piedmont's shareholders reject the tender offers. With regard to these responses, the plaintiffs allege that the defendants failed to inform Piedmont's shareholders that the Lex–Win tender offers were a timely liquidity event and viable exit strategy for holders of up to 9.3% of the stock. Additionally, the plaintiffs allege that the defendants made omissions regarding the likelihood of Piedmont becoming listed on the stock exchange as well as the then-current value or likely market price of the company's shares in comparison to the price of the Lex–Win tender offers.

On August 10, 2007, the defendants stated publicly that a listing of the company on the stock exchange would be unlikely. On October 16, 2007, Piedmont filed a Schedule 14A Proxy Statement seeking shareholders' approval to extend the January 30, 2008, deadline for up to three years at the Board's discretion. The plaintiff contends that this proxy statement was misleading in a variety of ways because it failed to disclose material facts to the shareholders.

After adjudicating the defendants' motion to dismiss, which was granted in part and denied in part [Doc. No. 44], the court directed the plaintiffs to file a recast complaint. The recast complaint [Doc. No. 47] contains two counts: (1) a class action claim asserting a violation of § 14(e) relating to the omission of information regarding the likelihood of the listing (Count I) and (2) a class action claim against the director defendants asserting a violation of § 14(a) of the Exchange Act relating to the recommendation of the extension of the list date (Count II).

## II. LEGAL ANALYSIS

The plaintiffs have proposed a class consisting of two subclasses (a) "shareholders who were entitled to tender their shares to Lex–Win in May 2007 through July 2007, and who have claims under § 14(e) of the Exchange Act arising from misrepresentations made by the defendants in connection with the Lex–Win tender offers (the "Tender Offer Class") "; and (b) "shareholders of record as of October 2, 2007 with claims under § 14(a) of the Exchange Act, arising from misstatements made in proxy statements soliciting their approval to extend the deadline by which the Company was to list its shares or liquidate (the "Proxy Class")".

■ Class certification is governed by Federal Rule of Civil Procedure 23. Subsection (a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The four requirements are commonly referred to as "the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *General Telephone Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). The burden of proving the Rule 23(a) prerequisites is on the party seeking class certification. *Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451, 456 (11th Cir.1996).

---

1. This liquidation deadline was extended through an amendment to the Company's Articles of Incorporation.

Rule 23(b) provides that, in addition to the Rule 23(a) prerequisites, a class must fall into one of three categories: (1) the pursuance of separate actions would create a risk of inconsistent verdicts or would, as a practical matter, make individual adjudications dispositive of the interests of class members who are nonparties; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the putative class such that declaratory or injunctive relief with respect to the class as a whole would be appropriate; or (3) questions of law or fact common to members of the class predominate over issues affecting individual members, and class adjudication is preferable to other methods of litigation for purposes of a fair and efficient resolution of the controversy.

 And finally, prior to the certification of a class, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim. *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). To have standing, a named plaintiff must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court. *Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

### A. Ascertainable Class and Prerequisites (Rule 23(a))

#### 1. Is the Tender Offer Class Ascertainable?

█ In addition to the prerequisites discussed in detail below, Rule 23(a) contains an implicit requirement that the class be "adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir.1970). "While the precise numbers of proposed class members need not be established, the class description must be sufficiently definite for the court to ascertain member status." *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 659 (M.D.Fla.2001) (citations omitted). The defendants have challenged the Tender Offer subclass, claiming that it is not ascertainable.

The plaintiffs define the Tender Offer Class as "all persons who were entitled to tender their shares pursuant to the Tender Offer Statement on Schedule TO under Section 14(d)(1) or 13(e)(1) of the Exchange Act, filed with the SEC by Lex–Win on May 25, 2007 (as amended on May 29, 2007, June 6, 2007, June 12, 2007, June 19, 2007, June 22, 2007, July 12, 2007, and July 26, 2007) (the "Lex–Win Tender Offers"), and who suffered harm as a result of the Director Defendants' actions and violations of Section 14(e) of the Exchange Act for issuing materially false and misleading Schedule 14D–9 Solicitation/Recommendation Statements on June 8 and 18, 2007." [Doc. No. 47 at ¶ 29]. The defendants argue that those shareholders "entitled to tender" is imprecise because the offer was subject to numerous conditions.[2] Also, the defendants contend that those shareholders "who suffered harm" is vague because there is no correlation between shareholders who did not tender and shareholders who suffered harm because there was no guarantee that any or all shares would be have been accepted by Lex–Win. Finally, the defendants contend that the putative class members' own circumstances may have dictated that they would not have tendered regardless of what was disclosed in the 14D–9.

In response, the plaintiffs claim the Tender Offer Class is ascertainable. First, the plaintiffs point out that all Piedmont shareholders had the opportunity to tender in response to the Lex–Win offer. While Lex–Win had the right to withdraw its offer, it did not do so. Furthermore, in the event that shares were tendered in excess of the maximum Lex–Win agreed to purchase, Lex–Win agreed to accept shares from all tendering shareholders on a pro rata basis. Additionally, the plaintiffs argue that the personal circumstances of putative class members and how these circumstances affected decision-making does not preclude class certification because reliance is presumed.

 The court finds that because the Lex–Win tender offer remained open even in the event that the maximum number of shares were tendered, albeit on a pro rata basis,

---

**2.** *The defendants fail to explain what conditions* they rely upon to make this argument.

there is no imprecision with regard to who was "entitled to tender." For the same reason, the court rejects the defendants' contention that shareholders "who suffered harm" is imprecise because there was no guarantee that any or all of the shares tendered would be accepted by Lex–Win. Likewise, the court is not persuaded by the defendants' claim that personal circumstances of individual shareholders affected the decision of whether to tender in response to the Lex–Win offer, making it impossible to ascertain "who was harmed." As the plaintiffs point out, reliance is presumed and individual circumstances are irrelevant. *See infra* Part II.B.2(a)(I). Accordingly, the court finds the subclasses defined by the plaintiffs to be ascertainable.

## 2. Numerosity

■ The numerosity requirement simply asks whether there are so many members of the class that joinder of them all would be impracticable. Fed.R.Civ.P. 23(a)(1). Factors determining whether joinder of class members is practicable include the size of the class, the geographical dispersion of the class, the ease with which class members may be identified, and the nature of the action and the size of each class member's claim. *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1038 (5th Cir.1981).

The plaintiff alleges that at the times in question, there were approximately 109,000 Wells REIT shareholders. Obviously, joinder of this many individuals would be impossible. The defendants have not objected to class certification with regard to numerosity. Accordingly, the court finds that the proposed Class meets the numerosity prerequisite of Rule 23(a).

## 3. Commonality

To satisfy the commonality requirement, the plaintiffs must show that there are questions of law or fact common to the entire class. Fed.R.Civ.P. 23(a)(2). It is not necessary that all questions of law and fact be common. *National Broadcasting Co. v. Cleland,* 697 F.Supp. 1204, 1216 (N.D.Ga.1988); *Strube v. American Equity Investment Life*

*Insurance Co.,* 226 F.R.D. 688, 695 (M.D.Fla. 2005).

In this case, questions common to the class will include, *inter alia*:

(a) whether the Director Defendants violated § 14(e) by causing a materially false and misleading Schedule 14D–9 Solicitation/Recommendation Statements and an Amendment thereto to be issued;

(b) whether the Director Defendants violated § 14(a) by causing a materially false and misleading Proxy to be issued; and

(c) whether the members of the Class have sustained damages and, if so, the proper measure of such damages.

The defendants do not oppose class certification on commonality grounds. The court, therefore, finds that the commonality requirement is met in this case.

## 4. Typicality

■ A class representative's claims or defenses must be typical of the claims or defenses of the class. Fed.R.Civ.P. 23(a)(3). Typicality is related to the element of commonality, but focuses on the "individual characteristics of the named plaintiff in relation to the class." *Prado–Steiman,* 221 F.3d at 1279. A representative's claim is typical if there is a "nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.* However, typicality does not require identical claims or defenses, and minor factual variations will not render a class representative's claim atypical. *Id.*

Here, the plaintiffs contend that the named plaintiffs, Washtenaw County ERS ("ERS") and Clara Smith are proceeding on exactly the same legal theories to remedy exactly the same course of conduct as every member of the class. In opposition to the motion to certify the class, the defendants argue that the named plaintiffs are subject to unique, non-reliance defenses making their claims atypical.

The defendants contend that because Ms. Smith had a conversation with Mr. Ashner (CEO of Lex–Win), upon which she relied more than upon the omissions in the Board's recommendation, her claims are atypical of the class. Likewise, the defendants argue that advice obtained from lawyers and financial advisors prior to deciding not to tender its shares makes ERS's claims atypical of the class. Another factor in ERS's decision to not tender its shares, according to the defendants, was its desire to retain standing in the earlier lawsuit (*In Re: Wells Real Estate Investment Trust Securities Litigation,* 1:07–CV–862–CAP (N.D.Ga.2007)), which is not typical of the circumstances of other potential class members.

 Each of the arguments of the defendants with regard to the typicality prerequisite go to the named plaintiffs' reliance upon the alleged omissions. The absence of reliance will be a defense raised by the defendants in this action. However, "differences in ... the availability of certain defenses do not defeat typicality, as long as the class claims are generally based on the same legal or remedial theory." *Morris v. Wachovia Securities, Inc.,* 223 F.R.D. 284, 295 (E.D.Va. 2004). Here, the named plaintiffs' claims are based on the same theories of recovery as well as supported by nearly identical factual bases. Accordingly, the court finds the named plaintiffs' claims to be typical of the class claims for both subclasses.

### 5. Adequacy of Representation

 As the final prerequisite under subsection (a), the class representative must "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The underlying purpose behind this requirement is to assure that the legal rights of absent class members are protected. *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 726 (11th Cir.1987). This requirement is generally met if (1) the class representatives do not have interests antagonistic to other class members, and (2) plaintiff's counsel can adequately represent the interests of the class. *Id.* Additionally, class representatives must possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative. *Id.*

The plaintiffs contend that the named plaintiffs are adequate class representatives, which has been demonstrated through their interests in pursuing this action and vindicating the rights of all shareholders. Additionally, the plaintiffs point out that they have retained qualified, able, and experienced counsel to conduct this litigation.

The defendants oppose class certification based on alleged inadequacy of the class representatives. Specifically, the defendants argue that the named plaintiffs are unfamiliar with all the necessary essentials of the lawsuit. The defendants make no challenge to the adequacy of class counsel.

The Eleventh Circuit's seminal case on adequacy of a lead plaintiff in a securities action is *Kirkpatrick.* In that case, the court instructed:

a principal factor in determining the appropriateness of class certification is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class.

*Kirkpatrick,* 827 F.2d at 726 (citation and internal quotations omitted). But the court cautioned:

adequate class representation generally does not require that the named plaintiffs demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class. Although the interests of the plaintiff class certainly would be better served if the named plaintiffs fully participate in the litigation, the economics of the class action suit often are such that counsel have a greater financial incentive for obtaining a successful resolution of a class suit than do the individual class members. It is not surprising, then, that the subjective desire to vigorously prosecute a class action ... quite often is supplied more by counsel than by the class members themselves.

*Id.* at 727 (internal citations omitted). Therefore, while "a potential class is entitled to more than blind reliance upon even competent counsel by uninterested and inexperi-

enced representatives," *id.* (citation and internal quotations omitted),

> in securities cases ... where the class is represented by competent and zealous counsel, class certification should not be denied simply because of a perceived lack of subjective interest on the part of the named plaintiffs unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case.

*Id.* at 728.

After reviewing the excerpts of the deposition of ERS's Rule 30(b)(6) representative [Doc. No. 95–11] and the excerpts of the deposition of Ms. Smith [Doc. No. 95–13], the court finds that ERS and Ms. Smith, in their roles as lead plaintiffs, have been and continue to be active participants in this litigation and have fulfilled their duties to oversee counsel. Accordingly, the court finds the lead plaintiffs to be adequate representatives of the class in this action. Additionally, the court finds that the plaintiffs' counsel can adequately represent the class.

## B. Type of Class Action (Rule 23(b))

### 1. Injunctive or Declaratory Relief (Rule 23(b)(2))

The plaintiffs assert that class certification is appropriate in this case because the defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Fed.R.Civ.P. 23(b)(2). More specifically, the plaintiffs allege that (1) the defendants acted on grounds generally applicable to the Tender Offer Class by making material omissions in their recommendations that shareholders not tender their shares to Lex–Win, and (2) the defendants acted on grounds generally applicable to the Proxy Class by making false and misleading statements in the Proxy regarding the extension of the Liquidity Deadline. The plaintiffs point out that they and the class are seeking injunctive relief to remedy these alleged wrongs.

The defendants, on the other hand, argue that the plaintiffs are seeking predominately money damages with regard to the Tender Offer Class. Therefore, according to the defendants, the Tender Offer Class is inappropriate for 23(b)(2) certification.

"[M]onetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001) (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 411 (5th Cir.1998)).

> By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief.... Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established.... Liability for incidental damages should not ... entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

*Id.* at 414

The remedy sought by the Tender Offer Class is a group remedy that will not entail complex individualized determinations. Therefore, Rule 23(b)(2) is satisfied as to the Tender Offer Class.

### 2. Predominance and Superiority (Rule 23(b)(3))

The plaintiffs argue that both proposed subclasses satisfy Rule 23(b)(3) because questions of law or fact common to the members of the class predominate over any questions affecting only individual member and the class action is superior to other available methods for the fair and efficient adjudication of the controversy. In response, the defendants argue that individual issues will predominate.

Courts have held that securities fraud cases are particularly appropriate candidates for treatment under Rule 23(b)(3) since the elements of the cause of action generally relate to the acts or omissions of the defendants. *In re Scientific–Atlanta, Inc. Securities Litigation*, 571 F.Supp.2d

1315, 1343 (N.D.Ga.2007) (citing *In re BearingPoint, Inc. Securities Litigation,* 232 F.R.D. 534, 542 (E.D.Va.2006); *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). To satisfy the predominance requirement, the plaintiffs must establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof." *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir.1997) (citations and quotation marks omitted). Here, of course, individual class members will differ in the number of shares owned resulting in variances in each class member's damages, but this is not sufficient to defeat predominance. *See Allapattah Services, Inc. v. Exxon Corp.,* 333 F.3d 1248, 1261 (11th Cir.2003).

The superiority requirement in Federal Rule of Civil Procedure 23(b)(3) directs the court's attention to "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay v. Humana, Inc.,* 382 F.3d 1241, 1269 (11th Cir.2004). The superiority requirement is grounded in the idea that the litigation is to be carried out as efficiently and as fairly as possible for all parties. *Amchem Products Inc. v. Windsor,* 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

### a. Predominance

#### i. Reliance

In this case, the parties agree that predominance is met for purposes of class certification when reliance may be presumed under either fraud-on-the-market doctrine or the *Affiliated Ute* doctrine. The defendants contend that the plaintiffs are not entitled to either presumption. The plaintiffs argue that they are entitled to a presumption of reliance pursuant to the *Affiliated Ute* doctrine.

The Supreme Court has held in that a case that involves primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. "All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). However, the *Affiliated Ute* presumption does not apply when a complaint alleges mixed claims of misrepresentations and omissions. *Kirkpatrick,* 827 F.2d at 722.

In this case, the plaintiffs' § 14(e) claim is that the defendants failed to disclose why the listing was no longer a basis for rejection of the tender offer. This alleged failure is an omission. Therefore, the *Affiliated Ute* doctrine applies, and reliance is presumed. Accordingly, there will be no need for individual proof as to reliance in this case.

#### ii. Materiality

The defendants contend that the level of knowledge that each individual class member possessed means that individualized proof will be necessary concerning the materiality of the alleged omissions. In other words, "whether the alleged omissions were material to a particular shareholder would depend on whether he had knowledge of the omitted fact from another source...." *Horowitz v. Pownall,* 105 F.R.D. 615, 620 (D.C.Md.1985).

An omitted fact is material if "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote," *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976), and if its "disclosure ... would have been viewed by the reasonable shareholder as having significantly altered the 'total mix' of information made available." *Id.* Therefore, materiality is determined based upon the "reasonable shareholder," not on the subjective views of individual investors. Accordingly, the amount of knowledge held by different class members is irrelevant to the determination of whether individual or class issues predominate with regard to the materiality of the alleged omissions.

#### iii. Damages

The defendants contend that the plaintiffs have failed to meet their burden of

demonstrating that evidence on damages can be presented on a class-wide basis. However, given the predominance of common issues related to liability, the individualized issues as to damages is insufficient to preclude class certification. *See In re Scientific–Atlanta, Inc. Securities Litigation,* 571 F.Supp.2d 1315, 1343 (N.D.Ga.2007).

### b. Superiority

The dispute at issue here is particularly well-suited for a class action. Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts. Accordingly, the court finds that a class action is superior to other methods to resolve this controversy.

### C. Standing

Standing is achieved when the named plaintiff is a member of the class it seeks to represent at the time the class is certified. *Sosna,* 419 U.S. at 403, 95 S.Ct. 553. ERS and Ms. Smith are currently members of the two subclasses proposed by the plaintiffs. Additionally, the defendants have raised no objection to the plaintiffs' standing in this case. Accordingly, the court finds that the plaintiffs have standing to represent the proposed class.

### D. Appointment of Lead Counsel

Pursuant to Rule 23(g), a court that certifies a class must appoint class counsel. Factors that the court should consider include:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

Fed.R.Civ.P. 23(g)(1). The court has reviewed the resumes of the three firms currently representing the plaintiff. Exs. A, B, and C to the motion for class certification [Doc. No. 59]. The court finds that these firms have extensive expertise in litigating federal securities actions. Therefore, the court concludes that Lead Counsel will fairly and adequately represent the Class.

### III. CONCLUSION

For the foregoing reasons, the plaintiffs' motion for certification of the class [Doc. No. 59] is GRANTED. The law firms of Chitwood Harley Harnes LLP, Chimicles & Tikellis LLP, and Labaton Sucharow LLP are appointed to serve as Class counsel pursuant to Federal Rule of Civil Procedure 23(g). The parties are DIRECTED to submit a joint proposal to this court within forty-five days for notice to class members pursuant to Federal Rule of Civil Procedure 23(c)(1)(B).